Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
Michael.shipley@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:   (213) 680-8400
Facsimile:   (213) 680-8500

Jay P. Lefkowitz (*pro hac vice*)
lefkowitz@kirkland.com
John P. Del Monaco (*pro hac vice*)
jdelmonaco@kirkland.com
Danielle Sassoon (*pro hac vice*)
dsassoon@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

*Attorneys for Defendants Pershing
Square Capital Management, L.P.; PS
Management GP, LLC; PS Fund 1,
LLC; and William Ackman*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| ALLERGAN, INC., *et al.*,<br><br>        Plaintiffs,<br>v.<br><br>VALEANT PHARMACEUTICALS<br>INTERNATIONAL, INC. *et al.*,<br><br>        Defendants. | Case No.: 8:14-cv-01214-DOC-(ANx)<br><br>Hon. David O. Carter<br>Courtroom: 9D<br><br>**COUNTERCLAIMS  OF VALEANT<br>AND PERSHING SQUARE** |

VALEANT PHARMACEUTICALS           )
INTERNATIONAL, INC., VALEANT       )
PHARMACEUTICALS                    )
INTERNATIONAL, AGMS, INC.,  PS     )
FUND 1, LLC and WILLIAM            )
ACKMAN,                            )
                                   )
        Counterclaimants           )
                                   )
v.                                 )
                                   )
ALLERGAN, INC.; DAVID PYOTT;       )
DEBORAH DUNSIRE; MICHAEL R.        )
GALLAGHER; TREVOR M. JONES;        )
LOUIS J. LAVIGNE; RUSSELL T.       )
RAY; PETER J. MCDONNELL,           )
TIMOTHY D. PROCTOR and HENRI       )
A. TERMEER,                        )
                                   )
        Counterclaim-Defendants.   )
_____)

-2-

COUNTERCLAIMS OF VALEANT AND PERSHING SQUARE

# INTRODUCTION

1.      In April 2014, Valeant proposed a merger to Allergan at a substantial premium to Allergan's share price before the proposal was announced.  Allergan and its Board of Directors rejected the proposal, categorically refused to negotiate with Valeant, and embarked on a campaign to prevent its shareholders from deciding for themselves whether to accept the proposal.  As Glass Lewis, a leading independent shareholder advisory firm, put it, Allergan is engaging in "obstructive" behavior "more indicative of a board concerned with entrenching its position than seeking to enhance shareholder value."  Allergan even resorted to using in its Complaint a six-line quote from Pershing Square's William Ackman from a surreptitiously recorded private conversation on May 13, 2014 with Allergan's Chairman and CEO, which was tape recorded without Mr. Ackman's knowledge or consent.

2.      But the scorched earth campaign waged by Allergan and its board went beyond bad corporate governance.  Allergan disseminated intentionally false and misleading statements in a deliberate campaign to manipulate Valeant's share price downward and its own share price upward.  This conduct violated multiple provisions of the federal securities laws.

3.      First, Allergan made false and misleading statements in a calculated effort to obstruct Allergan's shareholders from calling a special meeting of Allergan shareholders, as they are entitled to do under Allergan's Certificate of Incorporation and Delaware law.  At the special meeting, Allergan's shareholders would decide for themselves whether to remove shareholder-unfriendly directors, eliminate obstructive Bylaws, and request that the Board promptly engage in good faith discussions with Counterclaimants regarding a possible acquisition, including by rescinding various roadblocks Allergan has erected to prevent the pending exchange offer from succeeding.  To avoid giving shareholders an opportunity to be heard, Allergan made multiple false and misleading statements in violation of Rule 14(a) of the Exchange Act.  For example, Allergan claimed that Valeant's "business model is unsustainable"

1    based on assertions that Allergan knew to be untrue.  And Allergan falsely and

2    baselessly stated that the consideration in the proposed transaction was "grossly

3    inadequate," despite the fact that it would provide shareholders a 55 percent premium

4    over the unaffected stock price.

5         4.     Second, Allergan intentionally used these same misstatements in

6    opposing a pending exchange offer by AGMS, together with its Counterclaimant co-

7    bidders.

8         5.     Third, Allergan conducted a highly unusual road show, going to

9    Canada to meet with *Valeant's* shareholders.  The meetings could have had no

10   purpose other than to injure Valeant and depress its share price.  This peculiar tactic

11   of seeking to ward off an acquisition proposal by soliciting opposition to the proposal

12   from the acquiror's shareholders without filing a proxy statement violates the federal

13   securities laws.

14        6.     Counterclaim Defendants' misstatements, and their wholly improper

15   attempts to solicit Valeant shareholders, are acts of desperation that reflect flagrant

16   violations of the federal proxy solicitation and tender offer laws and rules set forth in

17   the Exchange Act and the Williams Act and the rules promulgated thereunder by the

18   SEC.  Defendants have disseminated false and misleading statements to Allergan

19   shareholders regarding the merits of Pershing Square's consent solicitation, in

20   violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9,

21   17 C.F.R. § 240.14a-9, and other misinformation and half-truths about Valeant and

22   the merits of Counterclaimants' ongoing exchange offer, in violation of Section 14(e)

23   of the Williams Act, 15 U.S.C. § 78n(e).  Moreover, Allergan has sought improperly

24   to solicit opposition to the proposed transaction from Valeant shareholders while

25   Valeant had a proxy solicitation underway, without submitting a proxy statement or

26   complying with the laws and regulations governing such solicitations, in violation of

27   Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-3, 17 C.F.R. §

28   240.14a-3.

-2-

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 15 U.S.C. §§ 77aa, 77n(a), 77t(a), 78t(a), and 28 U.S.C. § 1331.

8.      This Court has personal jurisdiction over the Counterclaim-Defendants because each of them has sufficient minimum contacts in the State of California to satisfy California's long-arm statute and constitutional due process requirements.  Allergan is headquartered in this District, conducts continuous and systematic business activities here, committed certain of the acts complained of herein in this District, and consented to suit in this Court by filing this action.  The individual defendants are directors of a company headquartered in this District and directed unlawful activities carried out in this District.

9.      Venue is proper in the United States District Court for the Central District of California pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) and (c).

## THE PARTIES

10.     Counterclaimant PS Fund 1, LLC ("PS Fund 1") is a limited liability company formed by and among: Pershing Square Capital Management, LP, a Delaware Limited Partnership and registered investment advisor; Pershing Square, L.P., a Delaware limited partnership; Pershing Square II, L.P., a Delaware limited partnership; Pershing Square International, Ltd., a Cayman Islands exempted company; Pershing Square Holdings, Ltd., a Guernsey limited liability company; and Valeant Pharmaceuticals International ("Valeant USA").  PS Fund 1 owns 28,878,538 shares of Allergan stock.

11.     Counterclaimant William Ackman is the founder and CEO of Pershing Square.  Mr. Ackman resides in New York.

12.     Counterclaimant Valeant Pharmaceuticals International, Inc. is a publicly traded company with its principal place of business in Laval, Quebec, Canada.  Valeant manufactures and markets pharmaceuticals, over-the-counter products, and medical devices in the areas of eye health, dermatology, and neurology

-3-

therapeutic classes.  Through its membership in PS Fund 1 LLC, Valeant beneficially owns 28,878,538 shares of Allergan stock.

13.     Counterclaimant Valeant Pharmaceuticals International is a Delaware corporation with its principal place of business in New Jersey.  It is a member of counterclaimant PS Fund 1 LLC.

14.     Counterclaimant AGMS Inc. ("AGMS") is a Delaware corporation and a subsidiary of Valeant Pharmaceuticals International, Inc.  AGMS is an offeror in Valeant's exchange offer.

15.     Counterclaim-Defendant Allergan, Inc. is a publicly traded Delaware corporation with its principal place of business in Irvine, California.

16.     Counterclaim-Defendant David Pyott is the Chief Executive Officer of Allergan and the Chairman of the Allergan Board of Directors.  Mr. Pyott has been the Chief Executive Officer of Allergan since January 1998 and the Chairman of the Board of Directors since 2001.  Mr. Pyott also served as President of Allergan from January 1998 until February 2006.  Mr. Pyott at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs.  In the years 2011, 2012 and 2013, Allergan paid Mr. Pyott an average of $15.7 million annually.  In 2012, Allergan granted Mr. Pyott 165,000 restricted stock units merely to "recognize over a decade of outstanding performance."  In the first quarter of 2014, Mr. Pyott sold 252,000 shares of Allergan stock at $123.12, more than $50 per share below the current implied price of the Exchange Offer.  These shares were not sold pursuant to a 10b5-1 plan.

17.     Counterclaim-Defendant Deborah Dunsire is a member of the Allergan Board of Directors.  Ms. Dunsire was appointed to the Allergan Board of Directors effective December 2006.  Ms. Dunsire at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted

-4-

1    and culpably participated, directly and indirectly, in the conduct of Allergan's
2    business affairs.  Allergan paid Dunsire $390,349 in 2013.

3          18.       Counterclaim-Defendant Michael R. Gallagher is a member of the
4    Allergan Board of Directors.  Mr. Gallagher has been a member of the Board of
5    Directors since 1998.  Mr. Gallagher at all relevant times participated in the operation
6    and management of Allergan and its related subsidiaries, and conducted and culpably
7    participated, directly and indirectly, in the conduct of Allergan's business affairs.
8    Allergan paid Mr. Gallagher $424,355 in 2013.

9          19.       Counterclaim-Defendant Trevor M. Jones is a member of the
10   Allergan Board of Directors.  Mr. Jones was appointed to the Board of Directors in
11   2005.  Mr. Jones at all relevant times participated in the operation and management of
12   Allergan and its related subsidiaries, and conducted and culpably participated, directly
13   and indirectly, in the conduct of Allergan's business affairs.  Allergan paid Mr. Jones
14   $451,021 in 2013.

15         20.       Counterclaim-Defendant Louis J. Lavigne Jr. is a member of the
16   Allergan Board of Directors.  Mr. Lavigne has been a member of the Board of
17   Directors since 2005.  Mr. Lavigne at all relevant times participated in the operation
18   and management of Allergan and its related subsidiaries, and conducted and culpably
19   participated, directly and indirectly, in the conduct of Allergan's business affairs.
20   Allergan paid Mr. Lavigne $450,732 in 2013.

21         21.       Counterclaim-Defendant Russell T. Ray is a member of the Allergan
22   Board of Directors.  Mr. Ray has been a member of the Board of Directors since 2003.
23   Mr. Ray at all relevant times participated in the operation and management of
24   Allergan and its related subsidiaries, and conducted and culpably participated, directly
25   and indirectly, in the conduct of Allergan's business affairs.  Allergan paid Mr. Ray
26   $473,372 in 2013.

27         22.       Counterclaim-Defendant Peter J. McDonnell is a member of the
28   Allergan Board of Directors.  Mr. McDonnell has been a member of the Board of

Directors since 2013.  Mr. McDonnell at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs.  Allergan paid Mr. McDonnell $427,232 in 2013.

23.     Counterclaim-Defendant Timothy D. Proctor is a member of the Allergan Board of Directors.  Mr. Proctor has been a member of the Board of Directors since 2013.  Mr. Proctor at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs. Allergan paid Mr. Proctor $429,232 in 2013.

24.     Counterclaim-Defendant Henri A. Termeer is a member of the Allergan Board of Directors.  Mr. Termeer has been a member of the Board of Directors since January 2014.[1]  Mr. Termeer at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs.

## FACTUAL ALLEGATIONS

## I.     VALEANT AND PERSHING SQUARE APPROACH ALLERGAN ABOUT A MERGER

25.     Pershing Square makes disciplined, long-term investments in under-valued and oftentimes poorly-managed companies. Over the last ten years, Pershing Square has generated very large returns for its investors and public market investors who have participated in Pershing's investments.  Since its launch in 2004, Pershing Square has generated net returns to investors of 625 percent.  That is more than five

---

[1] Counterclaim-Defendants David Pyott, Deborah Dunsire, Michael R. Gallagher, Trevor M. Jones, Louis J. Lavigne, Russell T. Ray, Peter J. McDonnell, Timothy D. Proctor and Henri A. Termeer are collectively referred to herein as the "Individual Counterclaim Defendants."

times the approximately 120 percent return of the S&P 500 during the same time period. Pershing Square's target holding period for its active investments is typically a minimum of four years and often substantially longer. Pershing Square's success includes investments in General Growth Properties, Canadian Pacific, Fortune Brands, Howard Hughes Corporation, Wendy's International, and Air Products.

26. Valeant is successful and cash-flow positive, with substantial and rapidly growing cash earnings, good credit, and a low debt-to-earnings ratio. From February 2008 to February 2014, Valeant shareholders realized stock-price returns of 2,544 percent, including dividend reinvestment. A core aspect of Valeant's business strategy is to earn its revenue through the sale of a diversified portfolio of durable products that are not subject to imminent patent expirations or other loss of exclusivity that will introduce sudden generic drug competition ("patent cliffs"). Valeant also minimizes risk and engages in low-risk, high-reward transactions. Specifically, it transacts with companies making products that are not subject to high-risk R&D activity.

27. In February 2014, Valeant and Pershing Square began discussing how they could work together in connection with a possible merger between Valeant and Allergan. On February 25, 2014, they entered into a letter agreement setting forth the terms of their relationship with respect to Allergan. That same day, PS Fund 1, an entity formed by Pershing Square, began purchasing Allergan stock. On April 21, 2014, Valeant and Pershing Square announced that PS Fund 1 was the beneficial owner of 9.7% of Allergan's outstanding stock. They simultaneously announced a proposal by which Valeant would acquire Allergan for a mixture of cash and Valeant stock, representing a substantial premium over the pre-announcement share price.

28. On May 12, 2014, Allergan sent Valeant a letter stating that Allergan's board had rejected the merger proposal. Allergan later issued a press release and investor presentation setting forth the board's purported reasons for rejecting a transaction, but Allergan refused to negotiate with Valeant.

-7-

29.     On May 30, 2014, in a letter to Allergan's CEO David Pyott, Valeant made a revised merger proposal that offered the following terms, among others: $72.00 per share; 0.83 common shares of Valeant stock; and a Contingent Value Right for DARPin of up to $25.00 per Share in Value.

30.     As part of the May 30, 2014 revised proposal, Pershing Square agreed to forego all cash and accept 100% of its consideration in Valeant stock using an exchange ratio determined based on the previous day's closing stock prices of Allergan and Valeant.  Pershing Square would also receive $20.75 per share less consideration than other Allergan stockholders, providing approximately $600 million more value for other Allergan stockholders.

31.     Under this proposal, Allergan's shareholders would receive consideration in cash and Valeant shares with a combined value that, as of the date of the offer, reflected a 55 percent (or $19 billion) premium above the market value of Allergan stock prior to Valeant and Pershing Square announcing they were interested in a transaction.

32.     Once again, Allergan's board rejected the offer outright, refusing to negotiate and declining to meet with Valeant to learn more about its business, notwithstanding that it claimed to be rejecting the offer because of supposed concerns about Valeant's business.

II.     **PERSHING SQUARE INITIATES THE PROXY SOLICITATION**

33.     Faced with the Allergan board's unwillingness to even consider a transaction, Pershing Square began working to call a special meeting of Allergan's shareholders to give shareholders an opportunity to be heard.  Allergan's Certificate of Incorporation requires the Company to call a special meeting of stockholders upon the written request of the holders of at least 25% of Allergan's outstanding stock.

34.     On June 2, 2014, Pershing Square began the process of calling a special meeting by filing a preliminary solicitation statement on Schedule 14A to

solicit the necessary commitments from the holders of 25% of Allergan's outstanding shares.[2]  Pershing Square sought to call the special meeting for the purpose of, among other things, (1) removing six of the nine members of the Allergan Board; (2) recommending a slate of highly qualified and independent replacement directors; (3) removing the onerous disclosure and other requirements that Allergan's bylaws purport to impose on shareholders calling a special meeting; and (4) requesting that Allergan's Board promptly engage in good faith discussions with Valeant.

35.     Thus, the special meeting that Pershing Square seeks would effectively be a referendum on the Allergan board's approach.  If shareholders agree with the board that the Valeant proposal should be rejected out of hand, then they can vote against removing directors and against engaging in good faith discussions with Valeant.  If shareholders believe that the board should consider the offer—which offers them a substantial premium over the pre-announcement market value of Allergan—and negotiate with Valeant, then they can vote for requesting that the board enter into discussions and to remove six of the board members who have chosen, as Glass Lewis put it, "obstructive" behavior "more indicative of a board concerned with entrenching its position than seeking to enhance shareholder value."

36.     As described further below, Allergan has vigorously opposed efforts by its shareholders to call a special meeting, through, among other things, misstatements and half-truths.

## III.   VALEANT AND PERSHING SQUARE LAUNCH AN EXCHANGE OFFER

37.     On June 2, 2014 Valeant announced that it intended to launch an exchange offer for the purpose of acquiring all outstanding Allergan shares.  On June

---

[2] June 2, 2014 Schedule 14A, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514220830/d737831dpren14a.htm.

18, Valeant filed a Schedule TO and Form S-4 with the SEC to formally commence the exchange offer (the "Exchange Offer").[3]

38.     The Schedule TO was filed jointly by Valeant Pharmaceuticals International, Inc. and its subsidiary AGMS Inc. ("AGMS").  AGMS is the purchaser, and would merge with Allergan promptly after consummation of the offer, making Allergan a subsidiary of Valeant.

39.     Valeant Pharmaceuticals International, Inc., AGMS, and PS Fund 1, LLC are co-bidders in the Exchange Offer, and were so identified in the Schedule TO. As described in the Form S-4, Pershing Square agreed to exchange all of the Allergan shares it controls for Valeant stock, as opposed to cash, immediately after consummation of the offer.

40.     Under the terms of the Exchange Offer, tendering shareholders would be able to elect to exchange each Allergan share for $72.00 in cash and 0.83 Valeant common shares, or an equivalent amount of cash or Valeant common shares.  The offer was originally set to expire on August 15, 2014, but was subsequently extended to December 31, 2014.  Therefore it is ongoing.

41.     The Exchange Offer is conditioned on, among other things, the Allergan board redeeming the poison pill rights plan dated as of April 22, 2014, or the poison pill rights otherwise bring rendered inapplicable.

## IV.   ALLERGAN ADOPTS A SCORCHED EARTH DEFENSE

42.     Despite knowing that Valeant and Pershing Square's proposal—which includes a substantial premium above the pre-announcement market value of Allergan stock—more than adequately and fairly compensated its shareholders,

---

[3] June 18, 2014 Valeant Schedule TO, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514240378/d745611dscto t.htm; June 18, 2014 Valeant Form S-4, *available at* http://www.sec.gov/Archives/edgar/data/885590/000119312514240177/d742263ds4.h tm.

Allergan's board has adopted a scorched earth defense in order to preserve their own positions.

43.     Allergan's board has refused to engage in good faith negotiations with Valeant and Pershing Square.  When Mr. Pyott, Allergan's CEO and Chairman, reluctantly agreed to speak to Mr. Ackman, Allergan's largest shareholder, it was not to discuss the proposal in good faith.  Rather, the phone call was secretly recorded, potentially for the purpose of publicizing the private conversation and attempting to use it to Allergan's advantage in litigation.

44.     Rather than negotiating or working with Valeant to perform any due diligence to investigate the proposed merger, Allergan chose to begin a public relations campaign designed to spread misinformation about Valeant, Pershing Square and their proposal, and to manipulate Valeant's share price downward to make the proposal look less appealing.

45.     Allergan, while refusing to negotiate or conduct any due diligence regarding Valeant's business, has repeatedly made false and misleading statements in an effort to mislead shareholders and the market about Valeant and its business prospects.  For example, Allergan filed a Schedule 14A on July 8, 2014 and issued a press release on June 16, 2014 in response to Pershing Square's proxy solicitation.[4]  In those responses, Allergan falsely asserted that Valeant faces "fundamental business model issues," and even that Valeant's entire "business model is unsustainable."[5]  Indeed, the central theme of Allergan's campaign is its oft-repeated assertions that Valeant's "business model is unsustainable" because it relies on acquisitions rather than organic

---

[4] July 8, 2014 Allergan Schedule 14A, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514262259/d756472ddef a14a.htm; June 16, 2014 Allergan press release, *available at* http://agn.client.shareholder.com/releasedetail.cfm?ReleaseID=854729.

[5] *Id.*

COUNTERCLAIMS OF VALEANT AND PERSHING SQUARE

growth and "unsustainable price increases."  Allergan has made these false statements while steadfastly rejecting the contrary information that Valeant has offered to share proving the strength and sustainability of its business model. Instead of performing any due diligence regarding Valeant's business, Allergan has repeated these statements over and over, even after Valeant explained to Allergan why they are false.  And Allergan has attacked Valeant's business model and the value of Valeant's stock even though its own financial advisor, Goldman Sachs, cannot possibly endorse those attacks.  Immediately prior to the announcement of the transaction (before it was required to suspend coverage), Goldman Sachs had a price target for Valeant of $164 and had Valeant on its "Conviction Buy List."  In addition, in June 2013, Goldman Sachs raised $2.3 billion as Valeant's sole underwriter of its equity offering.  Over several years, Goldman Sachs was a lead arranger or bookrunner for over $20 billion of Valeant debt.

46.     The principal example that Allergan has pointed to, Bausch + Lomb, demonstrates Allergan's knowing use of false and misleading information.  In a June 10, 2014 investor presentation, Allergan claimed that "Bausch & Lomb's outlook is poor" without citing to any evidence or analysis.[6]  As far back as its May 27, 2014 investor presentation, Allergan claimed that there had been "erosion" in Bausch + Lomb's business.  This is untrue.  As Allergan either knows or would know if it bothered to perform any level of investigation or analysis, the Bausch + Lomb business experienced double-digit revenue growth year-to-date in 2014.

47.     Allergan also repeatedly has asserted, for example in its July 8, 2014 Schedule 14A, that Valeant's growth is due to price increases rather than volume

---

[6] June 10, 2014 Allergan investor presentation at 13, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514231190/d740697dex992.htm.

increases.[7]  This criticism, too, is focused on Bausch + Lomb and is false:  90% of Bausch + Lomb's growth has come from volume increases rather than price increases. And that was clear from Valeant's public statements at the time Allergan made the inaccurate statements.  In Valeant's earnings call for the first quarter of 2014, its CEO stated that "for Bausch + Lomb, the growth is almost all volume."  Allergan's public statements misrepresented that fundamental point.

48.    These statements are false, and were disseminated by Allergan in order to create an inaccurate and misleading view of Bausch + Lomb's growth and, by extension, Valeant's business model as a whole.  Allergan's public statements seek improperly to assail, unfairly, the attractiveness of Valeant's acquisition proposal.

49.    Allergan deliberately decided to avoid requesting any opinion from its financial advisors on whether the proposal was fair to Allergan's shareholders. Attempting to cover up their decision not to obtain any fairness opinion, Allergan obtained so-called "inadequacy" opinions, with full knowledge that the proposed transaction was fair to shareholders.  An inadequacy opinion can be provided by a financial advisor in circumstances where the price offered is within the range of fairness, but there is a possibility that an acquirer might be able to pay a higher price than that which is on offer—even $0.01 per share may be enough.  In contrast, a fairness opinion goes to whether the price would be within a range acceptable to a willing buyer and a willing seller and is customarily given based on broader circumstances.  Allergan and its board are sophisticated and know that the question is not whether the co-bidders can pay more (a question addressed by inadequacy opinion), but whether the proposal is fair to the shareholders (a question addressed by fairness opinions).  With this knowledge, Allergan and its board intentionally chose not to obtain any fairness opinion, but to instead obtain inadequacy opinions.

---

[7] July 8, 2014 Allergan Schedule 14A.

-13-

Allergan and its Board then proceeded to misrepresent the import of these inadequacy opinions in communications to Allergan stockholders, in violation of federal law.

50.      Knowing that it was false, but in a desperate attempt to hold on to their own positions, Allergan, at the direction of its board, on June 23, 2014 filed with the Securities and Exchange Commission a response to Valeant's exchange offer and asserted therein that Valeant's offer was "grossly inadequate" to holders of Allergan Shares, "substantially undervalues Allergan, creates significant risks and uncertainties for Allergan stockholders, and is not in the best interests of Allergan and its stockholders."   Accordingly, Allergan recommended to its shareholders: "<u>REJECT</u> the Offer and <u>NOT TENDER</u> your Shares pursuant to the Offer" (emphasis in original).[8]

51.      Allergan's Schedule 14D-9 cites no fairness opinion on at all, only the opinions of its financial advisors, Goldman Sachs, & Co. ("Goldman Sachs") and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), that the offer was merely inadequate, in that negotiation with Valeant (which Allergan flatly refuses to do) might improve the price offered by Valeant.[9]  Allergan retained Goldman Sachs and Merrill Lynch to provide financial opinions, and on June 21, 2014, Goldman Sachs and Merrill Lynch "rendered an oral opinion to the Board, subsequently confirmed in writing, to the effect that, as of June 21, 2014 . . . the Offer was inadequate from a financial point of view to such holders [of Allergan shares]" (emphasis added).[10]

52.      The written opinions of Goldman Sachs and Merrill Lynch expressly state that they are limited to assessing the "adequacy" of the Valeant offer from a

---

[8] June 23, 2014 Allergan Schedule 14D-9 at 22, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514244537/d746340dsc14d9.htm.

[9] *Id.* at 22.

[10] *Id.* at 18-19.

financial point of view.  As Goldman Sachs' opinion states: "We do not express any view on, and our opinion does not address, the fairness, from a financial point of view, of the Consideration or any other term or aspect of the Transactions."[11]  Merrill Lynch's opinion likewise states: "no opinion or view is expressed with respect to the fairness (financial or otherwise) of the Consideration to be paid in the Transaction or amount, nature or any other aspect of any compensation . . . to be paid in the Offer."  Yet, Allergan has intentionally sought to trumpet these reports as supporting its claim that the price offered by Valeant represented "grossly inadequate" value for Allergan stockholders.  The reports say nothing of the sort, but state only that the price is "inadequate" insofar as there might be room for further negotiation.

53.     Allergan and its board know that there is no basis for its statement that the Valeant proposal (at a 50% premium) is "grossly inadequate."  Indeed, on February 13, 2014, a research report issued by Allergan's own advisor, Bank of America Merrill Lynch, set a price target of $132 for Allergan's stock, far below Valeant's offer.

54.     The Schedule 14D-9 filing also claims that the offer "substantially undervalues" Allergan, but contains no financial analysis support that assertion.  (*Id.* at 9, 19, 26)  That is contrary to SEC Release No. 34-16833 (May 23, 1980), which requires that valuation claims in contested solicitations be made "in good faith and on a reasonable basis" and be accompanied by disclosure that facilitates the shareholder's understanding of the basis for, and the limitations on, the projected realizable values.  Allergan provided no such disclosure.

55.     Allergan's June 23, 2014 Schedule 14D-9 also accused Valeant and Pershing Square of using "highly questionable tactics" to facilitate Valeant's offer.[12]  That accusation is completely unfounded, as Valeant and Pershing Square followed all

---

[11] *Id.* at Annex B.

[12] *Id*. at 21.

COUNTERCLAIMS OF VALEANT AND PERSHING SQUARE

securities and other laws.  Allergan's baseless, inflammatory and unexplained suggestion that Valeant and Pershing Square did something improper violates Exchange Act Rule 14a-9.  Note (b) to Rule 14a-9 forbids "materials which . . . directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation."  Allergan's charge that Valeant and Pershing Square's tactics were "questionable" is without factual foundation and therefore improper.

56.     Allergan's baseless attacks against Counterclaimants reached a new low in a July 18 filing that did not provide investors with any information, but was intended only to foment unfounded suspicions about Valeant.  In that filing, Allergan claimed that Valeant has "cherry picked data" and is "hid[ing] the ball," without any example or explanation to support the accusation.[13]  Allergan further maligned Valeant, stating that it "continue[s] to be concerned that Valeant may go to extremes to show growth at any cost, including inventory builds and aggressive rebating."[14]  These inflammatory and baseless accusations are expressly prohibited by Rule 14a-9 and Note (b) thereto.

57.     At the same time it was trying to depress Valeant's share price with false and misleading statements, Allergan was trying to push its own share price up with questionable earnings guidance.  In February 2014, before Valeant made its proposal, Allergan told the market that it expected earnings growth between 12% and 15% for 2014.  On May 12, 2014, it abruptly changed its guidance, claiming it "can achieve EPS growth of 20% on a compound annual basis over the next five years."  Allergan then revised its guidance upwards *again* on July 14, 2014.  There were no fundamental changes in Allergan's business in this period that would have caused

[13] July 18, 2014 Allergan Schedule 14A, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514272983/d760194ddef a14a.htm.

[14] *Id.*

such a significant change in Allergan's outlook, suggesting that the announcement was driven by Valeant's offer and an attempt to artificially inflate Allergan's share price to stave off a transaction.  Notably, Allergan announced on August 18 the resignation of its CFO, with limited disclosure that left the circumstances of his departure unclear.

## V.    ALLERGAN UNLAWFULLY SOLICITS VALEANT SHAREHOLDERS

58.    Not only has Allergan made false and misleading statements to its own shareholders, as part of its scorched-earth approach it has improperly reached out to *Valeant's* shareholders.  In July 2014, representatives of Allergan, including its CEO and Chairman, David Pyott, commenced an investor roadshow in Canada. Allergan does not have a history of traveling to Canada to meet with investors, and has a minimal business presence and minimal shareholder base there.  But its roadshow focused on Valeant, not Allergan, investors—in fact, Allergan met with Valeant shareholders that Allergan knew owned no Allergan stock and have no plan to buy any.

59.    In its meetings with Valeant shareholders, Allergan raised concerns about, and attempted to cast suspicion on, Valeant and its proposal to acquire Allergan in an effort to drive down the price of Valeant stock and to foment opposition to Valeant's acquisition proposal.

60.    This highly unusual attempt to convince another company's shareholders to sell their stock was unlawful.  On June 24, 2014, prior to Allergan's roadshow in Canada, Valeant had filed a Preliminary Proxy Statement on Schedule 14A with the SEC seeking shareholder approval for the issuance of shares in connection with Valeant's bid to acquire or merge with Allergan.  This solicitation is ongoing.  Thus, at the time of the roadshow, Valeant shareholders were subject to an ongoing proxy solicitation with respect to a potential transaction with Allergan.

Allergan's baseless criticisms of Valeant directly to Valeant shareholders was an attempt to solicit them not to support the share issuance.

61.     Under Rule 14a-3 of the Exchange Act, "no solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with" a publicly-filed preliminary or definitive proxy statement in the form and manner prescribed by the SEC.  Allergan did not file a proxy statement (or any disclosure whatsoever) in connection with its solicitation of Valeant shareholders in violation of Rule 14a-3.  Nor did Allergan take the steps set required under Rule 14a-12 in respect of solicitations made prior to filing a proxy statement.

62.     Allergan's violation of Rule 14a-3 was intentional.  Its improper solicitation was carried out by its Chairman and CEO, as part of the extensive campaign described herein to manipulate Valeant's share price downward and obstruct and delay any shareholder vote.

63.     Allergan's improper solicitation injured Valeant by interfering with Valeant's ongoing proxy solicitation.  In conjunction with Allergan's other unlawful conduct, it further harmed Valeant by manipulating downward Valeant's stock price in an attempt to reduce the consideration being offered to Allergan's shareholders and make Valeant's proposal appear less desirable.

## COUNT I

## COUNTERCLAIM FOR VIOLATION OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14a-9 AGAINST ALLERGAN

## 15 U.S.C. § 77n(a); 17 C.F.R. § 240.14a-9

64.     Counterclaimants incorporate by reference and reallege each and every allegation contained above as though set forth fully herein.

65.      Counterclaimants bring this claim against Allergan pursuant to Section 14(a) of the Exchange Act of 1934, 15 U.S.C. § 77n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder.

66.      Allergan issued materially false and misleading statements to shareholders or omissions of material fact, including the following:

- The statements in the July 8, 2014 Schedule 14A and June 16, 2014 press release that Valeant faces "fundamental business model issues," and that its entire "business model is unsustainable";

- The statement in Allergan's June 10, 2014 investor presentation that "Bausch & Lomb's outlook is poor" and statements, including in the July 8, 2014 Schedule 14A, that Valeant's growth is due to price increases rather than volume increases;

- The statements in the July 23, 2014 Schedule 14D-9 that Valeant's offer is "grossly inadequate" to Allergan shareholders and "substantially undervalues" Allergan; and

- The baseless and unexplained insinuations that Valeant and/or Pershing Square have acted improperly in the July 23, 2014 Schedule 14D-9 and the July 18, 2014 Schedule 14A.

67.      The foregoing untrue statements, and the material facts omitted by Allergan but necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, have affected, or likely will affect, the decisions of Allergan shareholders whether or not to request a special meeting.

68.      Allergan knew, or in the exercise of reasonable care should have known, that the foregoing statements and omissions were false and misleading.

69.      Allergan's misstatements of fact and omissions of material fact were made for the purpose of persuading Allergan shareholders not to call a special meeting

-19-

and have injured, and absent injunctive relief will continuing to injure, Allergan shareholders, including Valeant and Pershing Square.

70.     Allergan's public disclosures containing the misstatements of fact and omissions of material fact are essential links in Pershing Square and Valeant's efforts to call a special meeting.

## COUNT II

## COUNTERCLAIM FOR VIOLATION OF SECTION 14(e) OF THE EXCHANGE ACT AGAINST ALLERGAN

71.     Counterclaimants incorporate by reference and reallege each and every allegation contained above as though set forth fully herein.

72.     Counterclaimants bring this claim against Allergan pursuant to Section 14(e) of the Exchange Act of 1934.

73.     Allergan issued materially false and misleading statements to shareholders or omissions of material fact, including the following:

- The statements in the July 8, 2014 Schedule 14A and June 16, 2014 press release that Valeant faces "fundamental business model issues," and that its entire "business model is unsustainable";

- The statement in Allergan's June 10, 2014 investor presentation that "Bausch & Lomb's outlook is poor" and statements, including in the July 8, 2014 Schedule 14A, that [Valeant's] growth is due to price increases rather than volume increases;

- The statements in the July 23, 2014 Schedule 14D-9 that Valeant's offer is "grossly inadequate" to Allergan shareholders and "substantially undervalues" Allergan; and

- The baseless and unexplained insinuations that Valeant and/or Pershing Square have acted improperly in the July 23, 2014 Schedule 14D-9 and the July 18, 2014 Schedule 14A.

74.     The foregoing untrue statements, and the material facts omitted by Allergan but necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, have affected, or likely will affect, the decisions of Allergan shareholders whether or not to tender their stock in the exchange offer.

75.     Allergan made the foregoing false and misleading statements, and failed to state material facts, intentionally, knowingly, and/or in reckless disregard of their false and misleading nature, for the purpose of persuading Allergan shareholders not to tender their stock.

76.     Allergan's misstatements of fact and omissions of material fact have injured, and absent injunctive relief will continue to injure, Valeant and Pershing Square.

77.     Allergan's public disclosures containing the misstatements of fact and omissions of material fact are essential links in the Exchange Offer.

## COUNT III

### COUNTERCLAIM FOR VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT AGAINST THE INDIVIDUAL COUNTERCLAIM DEFENDANTS

### 15 U.S.C. § 78t(a)

78.     Counterclaimants incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

79.     Counterclaimants bring this counterclaim against the Individual Counterclaim Defendants under Section 20(a) of the Exchange Act of 1934, 15 U.S.C. § 78t(a), for controlling-person liability with regard to the Section 14(a) and 14(e) counterclaims set forth above.

80.     The Individual Counterclaim Defendants at all relevant times participated in the operation and management of Allergan and its related subsidiaries,

-21-

1   and conducted and culpably participated, directly and indirectly, in the conduct of
2   Allergan's business affairs.

3       81.     The Individual Counterclaim Defendants are controlling persons
4   within the meaning of Section 20(a) by virtue of their actual power over, control of,
5   ownership of, and/or directorship of Allergan at the time of the wrongs alleged herein
6   and as set forth herein, including their control over the content of the public filings
7   referred to herein.

8       82.     As alleged above, Allergan's public statements concerning the
9   Exchange Offer and Pershing Square's proxy solicitation, including the July 8, 2014
10  Schedule 14A; July 11, 2014 press release; June 10, 2014 investor presentation; June
11  23, 2014 Schedule 14D-9; and July 18, 2014 Schedule 14A, contained material
12  misstatements or omissions in violation of Sections 14(a) and 14(e) of the Exchange
13  Act and the rules promulgated thereunder.  The Individual Counterclaim Defendants
14  directed and/or participated in the foregoing false and misleading statements, and
15  failed to state material facts, intentionally, knowingly, and/or in reckless disregard of
16  their false and misleading nature.

17      83.     The Individual Counterclaim Defendants' conduct violated Section
18  20(a) of the Exchange Act, and accordingly the Individual Counterclaim Defendants
19  are jointly and severally liable with Allergan for the material misstatements or
20  omissions described herein.

21                              **COUNT IV**

22  **COUNTERCLAIM FOR VIOLATION OF SECTION 14(A) OF THE**
23  **EXCHANGE ACT AND RULE 14A-3 THEREUNDER BY VALEANT**
    **AGAINST MR. PYOTT AND ALLERGAN**

24                          **(by Valeant only)**

25      84.     Valeant incorporates by reference and realleges each and every
26  allegation contained above, as though fully set forth herein.

27

28

-22-

85.    On June 24, 2014, Valeant commenced a proxy solicitation seeking shareholder approval of the issuance of shares in connection with its bid to acquire or merge with Allergan.

86.    While Valeant's proxy solicitation was ongoing, Allergan, through (among others) Mr. Pyott, met with Valeant shareholders to solicit opposition to Valeant's proposal to acquire Allergan, including the share issuance that would be required to acquire Allergan.

87.    Allergan did not file a proxy statement with the SEC regarding its solicitation of Valeant shareholders in violation of Section 14(a) of the Exchange Act and Rule 14a-3 promulgated thereunder.

88.    Allergan and Mr. Pyott violated Section 14(a) and Rule 14a-3 knowingly, intentionally and/or recklessly.

89.    Valeant was injured, and absent injunctive relief will continue to be injured, as a result of Allergan's unlawful solicitation of Valeant shareholders.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray for relief as follows:

1.    That judgment be awarded in favor of Counterclaimants and against Counterclaim-Defendants on each and every counterclaim set forth herein;

2.    For an injunction requiring Allergan to promptly issue corrective disclosures addressing each of its misstatements and omissions;

3.    For an order enjoining Allergan from further violations of Sections 14(a) and 14(e) of the Exchange Act and SEC Rules 14a-9 and 14a-3;

4.    For an order awarding Counterclaimants their costs and disbursements in this action, including reasonable attorneys' and experts' fees; and

5.    For an order awarding Counterclaimants such other relief as the Court may deem just and proper.

Dated: August 19, 2014

Respectfully submitted,

KIRKLAND & ELLIS LLP

By: ___/s/ Mark Holscher

Mark Holscher (SBN 139582)
Michael Shipley (SBN 233674)
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017-5800
Telephone:   (213) 680-8400
Facsimile:    (213) 680-8500
Email:         mark.holscher@kirkland.com
                   michael.shipley@kirkland.com

Jay P. Lefkowitz (*pro hac vice*)
John P. Del Monaco (*pro hac vice*)
Danielle Sassoon (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Pershing Square Capital Management, L.P., PS Management, GP, LLC, PS Fund 1, LLC, and William A. Ackman*

-24-

1     Dated: August 19, 2014              SULLIVAN & CROMWELL LLP

2

3                                 By: ___/s/  Robert A. Sacks_____

4                                 Robert A. Sacks (SBN 150146)

5                                 sacksr@sullcrom.com
                                     Edward E. Johnson (SBN 241065)

6                                 johnsonee@sullcrom.com
                                     SULLIVAN & CROMWELL LLP

7                                 1888 Century Park East, Suite 2100

8                                 Los Angeles, California 90067-1725
                                     Tel: (310) 712-6600

9                                 Fax: (310) 712-8800

10

11                                Brian T. Frawley (*pro hac vice*)
                                     frawleyb@sullcrom.com

12                                SULLIVAN & CROMWELL LLP
                                     125 Broad Street

13                                New York, New York 10004-2498

14                                Tel.: (212) 558-4000
                                     Fax: (212) 558-3588

15

16                                *Attorneys for Defendants Valeant*
                               *Pharmaceuticals International, Inc., Valeant*

17                                *Pharmaceuticals International and AGMS, Inc.*

18

19

20

21

22

23

24

25

26

27

28

-25-

COUNTERCLAIMS OF VALEANT AND PERSHING SQUARE

1

## SIGNATURE CERTIFICATION

2

3

4

Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

5

Dated: August 19, 2014          KIRKLAND & ELLIS LLP

6

7                               By: /s/ Mark Holscher
                                    Mark Holscher
8                               *Attorneys for Pershing Square Capital Management,*
                                *L.P., PS Management, GP, LLC, PS Fund 1, LLC,*
9                               *and William A. Ackman*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTERCLAIMS OF VALEANT AND PERSHING SQUARE