1  LATHAM & WATKINS LLP
       Peter A. Wald (Bar No. 85705)
2         *peter.wald@lw.com*
   505 Montgomery Street, Suite 2000
3  San Francisco, California 94111-6538
   Telephone: +1.415.391.0600
4      Michele D. Johnson (Bar No. 198298)
          *michele.johnson@lw.com*
5  650 Town Center Drive, 20th Floor
   Costa Mesa, California  92626-1925
6  Telephone: +1.714.540.1235

7  WACHTELL, LIPTON, ROSEN & KATZ
       William D. Savitt (*pro hac vice*)
8         *wdsavitt@wlrk.com*
       Bradley R. Wilson (*pro hac vice*)
9         *brwilson@wlrk.com*
   51 West 52nd Street
10 New York, New York  10019
   Telephone: +1.212.403.1329
11
   Attorneys for Plaintiffs
12 ALLERGAN, INC. and
   KARAH H. PARSCHAUER
13
   [Additional counsel listed on signature page]
14

15                 UNITED STATES DISTRICT COURT

16                 CENTRAL DISTRICT OF CALIFORNIA

17                      SOUTHERN DIVISION

18 ALLERGAN, INC., *et al.*,          CASE NO.  8:14-cv-01214-DOC (ANx)

19              Plaintiffs,

20                                    **REPLY IN SUPPORT OF MOTION**
                                      **FOR PRELIMINARY INJUNCTION**
21      v.

22 VALEANT PHARMACEUTICALS
   INTERNATIONAL, INC., *et al.*,     Date:    October 28, 2014
23          Defendants.               Time:    8:30 a.m.
24                                    Judge:   Hon. David O. Carter
                                      Ctrm:    9D
25

26

27

28

LATHAM & WATKINS LLP   SF\5868614
ATTORNEYS AT LAW
ORANGE COUNTY
                                      CASE NO. 8:14-CV-01214-DOC (ANx)
                                      PLAINTIFFS' REPLY ISO MOTION FOR
                                      PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................. 1

II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ........................................................................................... 1

    A.  Plaintiffs Have Standing To Seek Injunctive Relief Under Section 14(e) And Rule 14e-3 ................................................... 2

    B.  Pershing Square Is Not An "Offering Person" ....................... 4

    C.  Valeant Had Taken "Substantial Steps" To Commence A Tender Offer At The Time Of Pershing Square's Trades .................. 9

    D.  Plaintiffs Are Likely To Succeed On Their Rule 14a-9 Claim ...................................................................................... 14

III. ALLERGAN AND ITS STOCKHOLDERS WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION ................................................................................ 17

    A.  Allowing Pershing Square to Vote its Illegally Obtained Shares Will Cause Irreparable Harm to Allergan and its Stockholders ......................................................................... 17

    B.  The Injunction Plaintiffs Seek Is Commonplace and Narrowly Tailored to Prevent Irreparable Harm Pending Final Judgment ..................................................................... 21

IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR GRANTING A PRELIMINARY INJUNCTION ......................... 23

V.  DEFENDANTS' "UNCLEAN HANDS" AFFIRMATIVE DEFENSE IS WITHOUT MERIT ................................................... 24

VI. CONCLUSION ................................................................................. 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Gen. Corp. v. Torchmark Corp.*,
  1990 WL 595282 (S.D. Tex. April 11, 1990) .................................................. 32

*Am. Pac. Corp. v. Super Foods Servs., Inc.*,
  1982 WL 8767 (Del. Ch. Dec. 6, 1982) ......................................................... 29

*Arc of California v. Douglas*,
  757 F.3d 975 (9th Cir. 2014) ........................................................................ 32

*Bath Indus., Inc. v. Blot*,
  427 F.2d 97 (7th Cir. 1970) .......................................................................... 32

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 22

*Bertoglio v. Texas Int'l Co.*,
  488 F.Supp. 630 (D. Del.1980) ...................................................................... 24

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ........................................................................................ 6

*Brody v. Transitional Hospitals Corp.*,
  280 F.3d 997 (9th Cir. 2002) ........................................................................... 6

*Burlington Indus., Inc. v. Edelman*,
  666 F. Supp. 799 (M.D.N.C. 1987) ................................................................. 5

*Camelot Indus. Corp. v. Vista Res., Inc.*,
  535 F. Supp. 1174 (S.D.N.Y. 1982) ............................................................... 17

*Chambers v. Briggs & Stratton Corp.*,
  863 F. Supp. 900 (E.D. Wis. 1994) ................................................................ 34

*Champion Parts Rebuilders, Inc. v. Cormier Corp.*,
  661 F. Supp. 825 (N.D. Ill. 1987) .................................................................. 32

*Chicago Stadium Corp. v. Scallen*,
  530 F.2d 204 (8th Cir. 1976) ......................................................................... 34

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

i

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

*Chris-Craft Indus. v. Piper Aircraft Corp.*,
 516 F.2d 172 (2d Cir. 1975) ................................................................... 30

*Crouch v. Prior*,
 905 F. Supp. 248 (D.V.I. 1995) ............................................................... 32

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*,
 654 F.3d 276 (2d Cir. 2011) ................................................................... 31

*EEOC v. Recruit U.S.A., Inc.*,
 939 F.2d 746 (9th Cir. 1991) ................................................................... 36

*Elec. Specialty Co. v. International Controls Corp.*,
 409 F.2d 937 (2d Cir. 1969) ..................................................................... 4

*EMAK Worldwide, Inc. v. Kurtz*,
 50 A.3d 429 (Del. 2012) .......................................................................... 27

*Essex Chem. Corp. v. Gurit-Heberlein AG*,
 1988 U.S. Dist. LEXIS 19515 (D.N.J. June 24, 1988) .............................. 5

*Fradkid v. Ernst*,
 571 F. Supp. 829 (N.D. Ohio 1983) ......................................................... 31

*Ganino v. Citizens Utils. Co.*,
 228 F.3d 154 (2d Cir. 2000) ................................................................... 25

*Gaspar*, 1985 WL 521 ................................................................................ 16

*Gearheart Industries, Inc. v. Smith International*,
 741 F.2d at 715-18 ................................................................................. 31

*Gen. Aircraft Corp. v. Lampert*,
 556 F.2d 90 (1st Cir. 1977) ..................................................................... 22

*Gen. Steel Indus. Inc. v. Walco Nat'l Corp.*,
 1981 WL 17552 (E.D. Mo. Nov. 24, 1981) .............................................. 26

*Graphic Sciences, Inc. v. International Mogul Mines, Ltd.*,
 397 F. Supp. 112 (D.D.C. 1974) .............................................................. 35

*Gulf & W. Indus. Inc. v. Great Atlantic & Pacific Tea Co., Inc.*,
 476 F.2d 687 (2d Cir. 1973) ................................................................... 31

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

ii

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

*Hanna Mining Co.* v. *Norcen Energy Res. Ltd.*,
  574 F. Supp. 1172 (N.D. Ohio 1982) ..................................................26, 31

*Hollywood Casino Corp. v. Simmons*,
  2002 WL 1610598 (N.D. Tex. July 18, 2002) .................................. 13

*Hughes v. Dempsey-Tegeler & Co.*,
  534 F.2d 156 (9th 1976) ....................................................... 25

*ICN Pharmaceuticals, Inc. v. Khan*,
  2 F.3d 484 (2d Cir. 1993) ..........................................26, 27, 30

*In re Apple Computer Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) ................................................ 25

*In re Western Union Sec. Litig.*,
  120 F.R.D. 629 (D.N.J. 1988) ................................................ 25

*Kennedy v. Applause, Inc.*,
  90 F.3d 1477 (9th Cir. 1996) ................................................ 19

*Kohn v. American Metal Climax, Inc.*,
  458 F.2d 255 (3d Cir. 1972) ................................................ 24

*Koppers Co. v. Am. Express Co.*,
  689 F. Supp. 1371 (W.D. Pa. 1988) ..............................11, 27, 30, 33

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014) ..................................................... 5

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
  148 F. Supp. 2d 1141 (D. Kan. 2001) ........................................ 22

*MacFadden Holdings, Inc. v. John Blair & Co.*,
  1986 WL 1171567 (D. Del. May 5, 1986) ...................................... 24

*MAI Basic Four, Inc. v. Prime Computer, Inc.*,
  871 F.2d 212 (1st Cir. 1989) ............................................... 11

*Medical Imaging Centers of America, Inc. v. Lichtenstein*,
  1996 U.S. Dist. LEXIS 22362 (S.D. Cal. Feb. 29, 1996) ...................... 32

*Missouri Portland Cement Co. v. H.K. Porter Co., Inc.*,
  535 F.2d 388 (8th Cir. 1976 ................................................ 32

LATHAM&WATKINS LLP   SF\5868614
ATTORNEYS AT LAW
ORANGE COUNTY

iii

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

*Neubronner v. Milken*,
   6 F.3d 666 (1993) ...................................................................................... 5

*Nowling v. Aero Services Int'l, Inc.*,
   734 F. Supp. 733 (E.D. La. 1990) ......................................................... 36

*ODS Techs.*, L.P. v. Marshall,
   832 A.2d 1254 (Del. Ch. 2003) ............................................................. 22

*Pabst Brewing Co. v. Kalmanovitz*,
   551 F. Supp. 882 (D. Del. 1982) ........................................................... 31

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   213 F. Supp. 2d 1146 (C.D. Cal. 2002) ................................................ 36

*Piper v. Chris-Craft Indus., Inc.*,
   430 U.S. 1 (1977) ............................................................................... 4, 30

*Prof'l Ins. Agents of Wash. v. CIR*,
   875 F.2d 870 (9th Cir. 1989) ................................................................ 19

*Ranger Oil Ltd. v. Petrobank Energy & Res. Ltd.*,
   2000 WL 33115906 (S.D.N.Y. May 23, 2000) ........................... 5, 31, 35

*S. Cal. Darts Ass'n v. Zaffina*,
   762 F.3d 921 (9th Cir. 2014) ................................................................ 35

SEC Litig. Release No. 953,
   24 S.E.C. Docket 439, 1981 WL 315222 ......................................... 26, 27

*SEC v. Chicago Helicopter Indus.*,
   1980 U.S. Dist. LEXIS 17214 (N.D. Ill. Jan. 18, 1980) ..................... 23

*SEC v. Ginsburg*,
   362 F.3d 1292 (11th Cir. 2004) ....................................................... 16, 17

*SEC v. Jacobs*,
   No. 1:13-cv-01289-SO (N.D. Ohio Aug. 15, 2014) ............................ 17

*SEC v. Maio*,
   51 F.3d 623 (7th Cir. 1995) .................................................................. 17

*SEC v. Mayhew*,
   121 F.3d 44 (2d Cir. 1997) .............................................................. 16, 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

iv

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

*SEC v. McCarthy,*
    322 F.3d 650 (9th Cir. 2003) ............................................................... 9

*SEC v. Warde,*
    151 F.3d 42 (2d Cir. 1998) ................................................................ 17

*S-G Secur., Inc. v. Fuqua Inv. Co.,*
    466 F. Supp. 1114 (D. Mass. 1978) ............................................. 31, 32

*St. Louis Police Ret. Sys. v. Severson,*
    2012 WL 5270125 (N.D. Cal. Oct. 23, 2012) ............................... 22, 23

*Telex Corp. v. Edelman,*
    1987 WL 43390 (N.D. Okla. Nov. 5, 1987) ....................................... 18

*Third Point LLC v. Ruprecht,* No. CIV.A. 9497-VCP,
    2014 WL 1922029 (Del. Ch. May 2, 2014) ..................................... 29

*Tully v. Mott Supermarkets, Inc.,*
    337 F. Supp. 834 (D.N.J. 1972) ...................................................... 30

*United Paperworkers Int'l Union v. International Paper Co.,*
    985 F.2d 1190 (2d Cir. 1993) ...................................................... 24, 25

*W. Dist. Council of Lumber Prod. & Indus. Workers v. Louisiana Pac.
    Corp.,*
    892 F.2d 1412 (9th Cir. 1989) ........................................................ 30

*Westlands Water Dist. v. United States, Dep't of the Interior, Bureau
    of Reclamation,*
    1994 U.S. Dist. LEXIS 6276 (E.D. Cal. Apr. 28, 1994) ................... 36

*Wilson v. Comtech Telecommunications Corp.,*
    648 F.2d 88 (2d Cir. 1981) ........................................................... 5, 6

**STATUTES**

44 Fed. Reg. at 9976-77 ...................................................................... 12

44 Fed. Reg. at 9987 ............................................................................. 9

44 Fed. Reg. at 9988 ............................................................................ 12

45 Fed. Reg. at 60 ............................................................................... 12

45 Fed. Reg. at 60,412 ................................................................................. 12

45 Fed. Reg. at 60,418 ................................................................................. 10

15 U.S.C. §78j(b) ........................................................................................... 5

15 U.S.C. §78m(d) ........................................................................... 12, 27, 30

15 U.S.C. §78n(a) .......................................................................................... 4

15 U.S.C. §78n(d) ........................................................................... 8, 9, 11, 30

15 U.S.C. §78n(e) ................................................................................. passim

17 C.F.R. § 240.10b-5 ............................................................................... 3, 4

17 C.F.R. § 240.14a-9 ...................................................................... 1, 18, 20

17 C.F.R. § 240.14d-1(g)(2) ......................................................................... 9

17 C.F.R. § 240.14e-3 .......................................................................... passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

vi

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

## I.    INTRODUCTION

When Pershing Square publicly revealed its 9.7% ownership stake in Allergan on April 21, 2014, and the next day saw its stake shoot up by more than $1 billion when Valeant announced an unsolicited takeover bid for Allergan, many asked "How Can It Be Legal?" *E.g.*, Ex. 132. At the time, some speculated about an untested loophole in federal securities law for trading ahead of a merger on inside information freely provided by the intended acquirer. *Id.* But on June 18, 2014, Valeant launched a tender offer for Allergan's shares. There is no loophole for insider trading in advance of a tender offer; it is plainly illegal under Rule 14e-3. Defendants admit that Valeant shared material, nonpublic information about its intent to acquire Allergan with Pershing Square but claim—as their lead argument—that an injunction should be denied because it would "substantially tilt the playing field." Opp. 1. The playing field has already been irreparably tilted by Defendants' insider trading. Pershing Square's unlawful toehold in Allergan enabled Valeant to put Allergan in play, when Valeant had no hope of doing so lawfully or on its own. An injunction must issue to preserve what is left of the status quo until Defendants' conduct can be adjudicated on the merits.

## II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Defendants argue that Plaintiffs are not likely to prevail on their insider-trading claims under Section 14(e) and Rule 14e-3 for three reasons: (1) Plaintiffs lack standing; (2) Pershing Square is an "offering person" immune from insider-trading liability; and (3) Valeant took "substantial steps" to commence only a merger, not a tender offer, during the relevant time period. Opp. 22-37; 15 U.S.C. § 78n(e); 17 C.F.R. § 240.14e-3. Defendants also argue that Plaintiffs cannot prevail on their Section 14(a) and Rule 14a-9 disclosure claim. Opp. 37-38; 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9. Notably, Defendants do not even mention the Ninth Circuit's alternative "serious questions" test—and cannot credibly dispute that serious questions plainly exist. Under both the "likelihood of success"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

1

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1   and the "serious quetsions" standard, Defendants' arguments are without merit.

2   **A.    Plaintiffs Have Standing To Seek Injunctive Relief Under Section**

3   **14(e) And Rule 14e-3**

4       Defendants argue that neither Allergan, as the target company, nor

5   Parschauer, as an Allergan stockholder, has standing to seek preliminary injunctive

6   relief to remedy an insider-trading violation under Rule 14e-3.   Opp. 22-23.

7   Defendants do not dispute that there is an implied private right of action to enforce

8   Rule 14e-3.   But, in their view, courts are powerless to remedy even the most

9   flagrant insider-trading violation in a fight for corporate control because *no private*

10  *person has standing to seek injunctive relief*.   That is not the law.   "[I]n corporate

11  control contests[,] the stage of preliminary injunctive relief, rather than post-

12  contest lawsuits, 'is the time when relief can best be given.'"   *Piper v. Chris-Craft*

13  *Indus., Inc.*, 430 U.S. 1, 42 (1977) (quoting *Elec. Specialty Co. v. Int'l Controls*

14  *Corp.*, 409 F.2d 937, 947 (2d Cir. 1969) (Friendly, J.)).   This is the critical stage,

15  and Plaintiffs have standing to seek the only relief that matters.

16      ***Allergan Has Standing***:   Defendants do not contest that Allergan has Article

17  III standing.   Allergan is "imminently threatened with a concrete and particularized

18  'injury in fact' that is fairly traceable to" Defendants' unlawful actions and is

19  "likely to be redressed by a favorable judicial decision."   *Lexmark Int'l, Inc. v.*

20  *Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citation omitted).

21  Defendants instead argue that only a contemporaneous trader has standing.

22      But the contemporaneous-trading limitation on which Defendants rely has its

23  origin in cases brought by a different entity (stockholders), interpreting different

24  statutory and regulatory provisions (Section 10(b) and Rule 10b-5), and seeking a

25  different remedy (damages).   *See Neubronner v. Milken*, 6 F.3d 666, 669–70 (9th

26  Cir. 1993); *Wilson v. Comtech Telecommc'ns Corp.*, 648 F.2d 88, 94 (2d Cir.

27  1981).   No court has extended a contemporaneous-trading requirement to an

28  insider-trading suit under Section 14(e) and Rule 14e-3 brought by an issuer for

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

2

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

injunctive relief.  To the contrary, every court to consider the issue has held that a target has standing to seek injunctive relief under Rule 14e-3—regardless of whether it traded during the relevant period or, indeed, at all.  *See Essex Chem. Corp. v. Gurit-Heberlein AG*, 1988 U.S. Dist. LEXIS 19515, at *14–15 (D.N.J. June 24, 1988); *Burlington Indus., Inc. v. Edelman*, 666 F. Supp. 799, 806, 813 (M.D.N.C. 1987), *aff'd*, [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 93,339 (4th Cir. 1987); *cf. Ranger Oil Ltd. v. Petrobank Energy & Res. Ltd*., 2000 WL 33115906, at *9 n.1 (S.D.N.Y. May 23, 2000) (assuming issuer standing).[1]

Defendants contend that *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997 (9th Cir. 2002), is "on-point" (Opp. 22) and dictates a different result.  Not so. In *Brody,* the plaintiffs were stockholders, not the target corporation; the stockholders were seeking retrospective damages, not prospective equitable relief; and the plaintiffs brought an insider-trading claim under *both* Rule 10b-5 and Rule 14e-3.  280 F.3d at 1004–05.  These three distinctions compel a different result. When the plaintiff is an issuer and the relief being sought is an injunction, there is no risk of making the insider "liable to all the world."  *Wilson*, 648 F.2d at 94; *cf. Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740–41, 746 (1975) (discussing policy underlying purchaser-seller rule in Rule 10b-5 private damage actions).  Moreover, the "duty to disclose or abstain" in Rule 14e-3 is intended to protect *all* stockholders in the target company, not just those who trade contemporaneously with insiders.   When third-party institutions use inside information to acquire large toeholds in the target company—as Pershing Square

---

[1] Defendants' attempt to distinguish these cases is, at bottom, an argument that they were wrongly decided.  They were not, and Defendants are unable to identify a single case holding otherwise.  Defendants' reliance on *Ranger Oil*'s discussion of irreparable harm (Opp. 15-16, 23 n.23) is also perplexing.  The court made clear that "[t]he issue of whether [the target company] has standing to bring this action is separate from the question of whether the plaintiff has shown irreparable harm." *Ranger Oil*, 2000 WL 33115906, at *9 n.1.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

3

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1   did here—they "manipulate[] the tender offer process" (*Brody*, 280 F.3d at 1004),
2   inflicting harm on *all* stockholders by diluting their votes and forcing them to make
3   a "distorted choice" among alternate proposals based on a rigged deck.  Choi Rep.
4   ¶¶ 38, 43, 55, 64-66.  The target company is often in the best position to seek
5   injunctive relief that will vindicate the rights of all stockholders.  *See Elec.*
6   *Specialty Co.*, 409 F.2d at 944–46 ("[T]he superior resources of the corporation . . .
7   can be vital [in the tender offer context] where remedial action must be speedy and
8   forceful."); *see also Polaroid Corp. v. Disney*, 862 F.2d 987, 1001 (3d Cir. 1988).

9       Courts of appeals have thus uniformly held that a target company has
10  standing to seek injunctive relief under Section 14(e).  *See, e.g.*, *Polaroid Corp.*,
11  862 F.2d at 1001–03; *Fla. Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519
12  (11th Cir. 1985); *Gearhart Indus. Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 713–14
13  (5th Cir. 1984); *Gulf & W. Indus., Inc. v. Great Atl. & Pac. Tea Co.*, 476 F.2d 687,
14  696 n.14 (2d Cir. 1973).  Nothing in *Brody* requires Section 14(e) insider-trading
15  claims to stand on different footing.

16      ***Parschauer Has Standing***:  Defendants do not dispute that Parschauer has
17  standing under Rule 14e-3; they argue only that her remedy is limited to damages.
18  Opp. 18 n.9, 23.  That is incorrect for two reasons.  First, Parschauer (as a *current*
19  Allergan shareholder (Compl. ¶ 21)) will be harmed if illegally obtained shares are
20  voted.     Second, a preliminary injunction would prevent Defendants from
21  permanently dismantling Allergan and, in turn, preserve her right to rescission after
22  trial.  *See id.* at 48, ¶ C.

23      **B.    Pershing Square Is Not An "Offering Person"**

24      Defendants argue that Pershing Square is an "offering person" immune from
25  insider-trading liability.  Opp. 31-37.  Defendants conflate different terminology
26  meant for different purposes and describe a "joint venture" relationship that did not
27  exist.  Pershing Square did not *offer* Allergan stockholders anything (besides a
28  tainted proxy contest), and can gain no benefit from that limited exception.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614                                    4                    CASE NO. 8:14-CV-01214-DOC (ANx)
                                                                  PLAINTIFFS' REPLY ISO MOTION FOR
                                                                  PRELIMINARY INJUNCTION

1   **"Bidder" and "offeror" are not synonymous with "offering person"**:  All

2 parties agree that Defendants qualify as "bidder[s]" under Regulation 14D.  17

3 C.F.R. § 240.14d-3.  Defendants argue that this marks the end of the analysis.  In

4 their view, a "bidder" under Regulation 14D is, by definition, an "offering person"

5 under Rule 14e-3.  Opp. 32.  That is incorrect as a matter of law.

6   The plain text (which Defendants all but ignore) makes clear that the terms

7 "bidder" and "offering person" are not synonymous.  Regulation 14D instructs that

8 no "bidder" shall make a tender offer without providing the necessary disclosures.

9 17 C.F.R. § 240.14d-3.  It defines "bidder" as "any person who makes a tender

10 offer *or on whose behalf a tender offer is made.*"  *Id.* § 240.14d-1(g)(2) (emphasis

11 added).    Section 14(d), in turn, defines a "person," "*for purposes of this*

12 *subsection*," to include "two or more persons" acting as, *inter alia*, a "group for the

13 purpose of acquiring, holding, or disposing of securities of an issuer."  15 U.S.C.

14 § 78n(d)(2) (emphasis added); *see* 17 C.F.R. § 240.14d-1(g).

15   Rule 14e-3 does not use the term "bidder" and does not cross-reference

16 Regulation 14D.  Similarly, Section 14(e) does not define the term "person" and

17 does not cross-reference the broader definition of "person" in Section 14(d)(2).

18 Instead, Rule 14e-3 introduces a new term ("offering person") with a new

19 definition (a person that "has taken a substantial step or steps to commence, or has

20 commenced, a tender offer").  17 C.F.R. § 240.14e-3(a).  That Rule 14e-3 does not

21 use the familiar term "bidder" refutes Defendants' contention that the two terms

22 are co-extensive.  *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) (different

23 terms "demonstrates that Congress intended to convey a different meaning ").

24   Defendants contend (Opp. 36) that the SEC "rejects" any distinction

25 between a "bidder" for disclosure purposes and an "offering person" for insider-

26 trading purposes.  This argument is belied by the regulatory history, and SEC

27 comments in this very case.  When the SEC first proposed the insider-trading ban,

28 it *had* used the term "bidder" to describe the entity making the tender offer *and*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614             5           CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

those covered by Section 14(d)'s disclosure requirements.  *See* Ex. 128 at 9980, 9987 (Tender Offers, 44 Fed. Reg. 9956 (Feb. 15, 1979) ("Proposed Rule 14e-2")). But when the SEC issued Final Rule 14e-3, it dropped "bidder" from the insider-trading provision and inserted the new term "offering person."  Ex. 126 at 60,418 (45 Fed. Reg. 60,410 (Sept. 12, 1980) ("Adopting Release")).

 

 

 

 

 

 

 

 

The unique contexts in which the respective terms appear further illustrate why they describe an overlapping, but distinct set of entities.  Mot. 19-23. Defendants blithely dismiss this as mere "policy," but they have no substantive response.  Opp. 36.  The disclosure requirements in Section 14(d) and Regulation 14D were designed to maximize stockholder information in the tender-offer context, Ex. 124 at 6-7 (H.R. REP. NO. 90-1711 (1968)), and the SEC and courts have quite reasonably read the term "bidder" broadly to include participants other than the person making the tender offer (*i.e.*, those "on whose behalf a tender offer is made").  Ex. 149; *see MAI Basic Four, Inc. v. Prime Computer, Inc.*, 871 F.2d 212, 221 (1st Cir. 1989); *Koppers Co. v. Am. Express Co.*, 689 F. Supp. 1371, 1388–93 (W.D. Pa. 1988).  The insider-trading restrictions in Rule 14e-3, by contrast, reflect a purposefully broad prohibition with only one narrow exception: an "offering person" can trade based on material, non-public information about *its own* forthcoming tender offer.  Insider trading results in net wealth transfers from ordinary investors to third-party insiders, without any corresponding improvement in societal welfare.  *See* Mot. 19-23; Ex. 126 at 60,412; Ex. 128 at 9976-77; Choi

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

6

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

Rep. ¶¶ 36-40, 67-72.  By expanding the class of persons obligated to make *disclosures*, the SEC did not also (and, rather indirectly) expand the class of persons free to commit *insider trading*.  Ex. 114.  Yet, that is the logic (and consequence) of Defendants' position.  *Id.*

Similarly, Defendants repeatedly conflate the term "offeror" and "offering person," and describe themselves as "co-offerors."  Opp. 31.  But "offeror" has the same definition as "bidder."  *Compare* Regulation M-A, Ex. 147 ("Offeror means any person who makes a tender offer or on whose behalf a tender offer is made."), *with* 17 C.F.R. § 240.14d-1(g)(2) ("The term bidder means any person who makes a tender offer or on whose behalf a tender offer is made.").  The term "offeror" appears in Regulation M-A and, like "bidder," operates in the context of disclosure requirements under, *inter alia*, Regulation 14D.  *See, e.g., id.* § 240.14d-100K.  Whether Defendants are "co-offerors" for the purposes of Section 14(d) has no bearing on the meaning of "offering person" under Rule 14e-3—a Rule promulgated under a different statutory section, using a different term and serving a different purpose.  Accordingly, Plaintiffs' "concessions" that Pershing Square is a "co-bidder" or "co-offeror," Pershing Square's designation as a "co-offeror" in the offering materials, and SEC statements and cases interpreting the terms "bidder" and "offeror" are simply irrelevant.  Opp. 31-32, 34 & n.17.[2]

***Pershing Square is not an "offering person"*:**  Stripped of that syllogism

---

[2] The only "case law" purportedly supporting Defendants claim is an out-of-circuit, unpublished district court case.  Opp. 33-34.  In *Hollywood Casino Corp. v. Simmons*, 2002 WL 1610598 (N.D. Tex. July 18, 2002), the plaintiff *alleged* that *all* of the defendants had "commenced a 'creeping' tender offer" and were "working as a group to take over" the target company.  *Id.* at *3.  The court suggested that, under the *plaintiff's* "group theory, [the defendants] together would be the 'offering person' . . . and, thus, would be immune from" liability under Rule 14e-3.  *Id.*  The court did not hold that any "bidder" under Regulation 14D is automatically exempt from liability under Rule 14e-3.  Nor did the court consider any of the arguments set forth above.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

7

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1   (*i.e.*, Pershing Square is a co-bidder, all co-bidders are offering persons, therefore

2   Pershing Square is an offering person), Defendants' argument falls apart.   An

3   "offering person" is the person who is actually offering to acquire the target's

4   securities and "commenc[ing]" the tender offer.   Pershing Square did not make the

5   tender offer; Valeant did.   Accordingly, Pershing Square is an "other person"

6   subject to the insider-trading restrictions.

7         Defendants begin with a strawman:  they argue that the offering person can

8   be more than one person.  Opp. 35.  That is, of course, true.  If multiple entities

9   were to propose an exchange of consideration with the target's stockholders and to

10   seek management of the resulting company, they would each be an "offering

11   person" under Rule 14e-3.  *Cf. Hollywood Casino Corp.*, 2002 WL 1610598, at *3.

12   But that is *not* what occurred here.   Pershing Square did not offer to purchase

13   shares of Allergan's stock as part of the proposed tender offer, did not control the

14   terms of the tender offer, and would have no control over the resulting company.

15   Valeant is the only entity offering to purchase Allergan shares.  *See* Ex. 3 at 1

16   ("Who is Offering to Acquire My Shares of Allergan Common Stock?  A:  The

17   offer is being made by Valeant through Purchaser, a wholly owned subsidiary of

18   Valeant[.]").   Only Valeant secured financing for the tender offer and only Valeant

19   will be liable to its financiers.   Ex. 139 at 7-10, 33.   Valeant retained final

20   discretion to make the bid and set its terms, Ex. 34 at § 1(d), control critical

21   milestones in Pershing Square's trading that could affect the timing of any

22   exchange offer, *see id.* at § 1(a), and control Pershing Square's contribution of

23   financing towards the tender offer, *see id.* at § 2(a).  And only Valeant will control

24   the resulting entity if a tender offer is successful.  Pershing Square will become a

25   stockholder, not management or a controlling party. ██████████████████

26   ████████████████████████████████████████████████

27   ████████████████████

28         Defendants point to other terms in the Pershing Agreement which, they

1   argue, demonstrate that their interests are aligned.  Opp. 33; Ex. 34 at §§ 1(e), 2(b)-

2   (c).  But shared interests do not transform Pershing Square into an "offering

3   person"—if that were the rule, lenders or any other party that wanted to see the

4   deal close would be free to trade on inside information.  In any event, the purported

5   alignment of interests is more elusive than real.  Pershing Square retains the right

6   to support a competing offer that is not matched by Valeant.  Ex. 34 at § 5(d)-(e).

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ██████████████████████████████████████████   And while Defendants argue that

10  they are "jointly and severally liable" (Opp. 4), they fail to mention that Valeant

11  has fully indemnified Pershing Square for any such liability.  *See* Ex. 136 § 2.

12         **C.     Valeant Had Taken "Substantial Steps" To Commence A Tender**

13                **Offer At The Time Of Pershing Square's Trades**

14         Defendants contend that Valeant did not take *any* "substantial steps" to

15  commence a tender until late May, when Allergan stockholders suggested that an

16  "exchange offer" might be a good idea.  Opp. 24-30.  That argument rests on a

17  mischaracterization of the governing law and a selective and wholly incredible

18  recitation of the facts.

19         ***The Law.***  Defendants contend that Rule 14e-3's restriction on insider

20  trading does not apply until the offeror makes an "actual decision" to commence a

21  tender offer.  Opp. 24.  The minimal authority Defendants cite for this proposition

22  does not support their claim, and the argument is easily dismissed.

23         As a matter of ordinary usage, one can take a "substantial step" towards

24  doing something without having already made the decision to do that thing (*i.e.*,

25  without having decided to take the *final* step).  The Adopting Release (on which

26  Defendants' selectively rely) makes that distinction clear:  "Unlike the November

27  proposal, which *was* triggered by the determination by the bidder to make a tender

28  offer, Rule 14e-3 is triggered by any person taking a substantial step or steps to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614                                    9                  CASE NO. 8:14-CV-01214-DOC (ANx)
                                                         PLAINTIFFS' REPLY ISO MOTION FOR
                                                                   PRELIMINARY INJUNCTION

1  commence a tender offer." Ex. 126 at 60,413 n.33 (emphasis added).
2  Accordingly, "the prohibition of Rule 14e-3(a) . . . applies to the period from the
3  accomplishment by the offering person of a substantial step or steps to commence
4  a tender offer to the termination of the tender offer." *Id.* (activities which
5  "substantially facilitate the tender offer" are "substantial steps"); *see also* Ex. 127
6  at 70,353 (44 Fed. Reg. 70,349 (Dec. 6, 1979)).

7          Defendants also argue that the "substantial steps" must be "related or
8  connected with a tender offer." Opp. 25. That is true as far as it goes, but it does
9  not go very far. Steps to adopt a new employee manual do not count. Steps taken
10  towards acquiring Company A may bear no relation to a tender offer commenced
11  for shares of Company B. And so on. But when substantial steps have been taken
12  to *acquire* a target company (through whatever means), when those steps would
13  equally "facilitate" a tender offer, and when a tender offer occurs in short order, the
14  necessary nexus can be presumed. That is not reasoning from "hindsight" (*id.* at
15  28); it is applying common sense, and taking the SEC at its word that the standard
16  is primarily "objective." Ex. 126 at 60, 413 n.33.

17          The case law overwhelmingly supports this approach.[3] Mot. 25-27 & n.38.
18  Defendants' cursory attempt to distinguish three of the cited cases on their facts is
19  unavailing. Neither *SEC v. Maio*, 51 F.3d 623 (7th Cir. 1995), nor *SEC v. Warde*,
20  151 F.3d 42 (2d Cir. 1998), requires an "actual decision" to make a tender offer.
21  Both cases focused on whether a pre-decision "meeting" was "substantial," not
22  whether it related to a tender offer. *Warde*, 151 F.3d at 49; *Maio*, 51 F.3d at 636.
23  *SEC v. Ginsburg*, 362 F.3d 1292, 1303 (11th Cir. 2004), in contrast, *did*

---

[3] As Pershing Square's own in-house counsel explained, "substantial steps" is a "relatively low threshold" that is "quite easy" to meet. *Federal Regulation of Shareholder Activism (audio)*, AMERICAN BAR ASSOCIATION, BUSINESS LAW SECTION (2014 Annual Meeting), at approximately 1:10:00. http://apps.americanbar.org/buslaw/apps/updatedsearch/results.cfm?s=61&np=14& st=&sc=&sp=&sm=AM&sy=2014&ss=10.

specifically address that issue and held that a company can take "substantial steps" towards a tender offer months before it "settle[s] on a tender offer as the form of the transaction."[4]  *See* Ex. 78 at *12 (Order, *SEC v. Jacobs*, No. 1:13-cv-01289-SO (N.D. Ohio Aug. 15, 2014), ECF No. 112); *Camelot Indus. Corp. v. Vista Res., Inc.*, 535 F. Supp. 1174, 1183 (S.D.N.Y. 1982).[5]

**The Facts.**  Defendants' recitation of the events leading up to the June 2014 tender offer is, to put it charitably, more fiction than fact.  Defendants do not dispute that Valeant took "substantial steps" before February 25 and throughout the trading period by holding numerous meetings with Pershing Square executives, retaining legal counsel, negotiating and entering into the Pershing Agreement, signing confidentiality agreements, and engaging in due diligence.  Instead, they argue that each step related *only* to the proposal of a friendly merger and that *none* had any relation to the tender offer commenced only two months later.  That assertion is not credible.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[4] Defendants' only response is to draw a tenuous factual distinction (that fails on its face), and to suggest the court misread *SEC v. Mayhew*, 121 F.3d 44 (2d Cir. 1997).  It did not.  In *Mayhew*, the substantial steps related to acquisition of the target company (*i.e.*, "talks with a potential merger candidate or candidates"), *id.* at 48, 53, not a tender offer *per se*.

[5] Defendants point only to an out-of-circuit, unpublished district court decision to support their argument to the contrary.  Opp. 28 (citing *Telex Corp. v. Edelman*, 1987 WL 43390 (N.D. Okla. Nov. 5, 1987)).  In *Telex*, plaintiffs apparently agreed that intent was required and "ask[ed] the Court to draw" an "inference[] of intent from [the tender offeror's] conduct."  1987 WL 43390, at *5.  There, the *only* "substantial step" identified was the initial purchase of stock in the target company. *Id.*  *Telex* (which is devoid of legal analysis) does not controvert the weight of authority, on which it too relied.  *Id.*

LATHAM&WATKINS LLP  SF\5868614
ATTORNEYS AT LAW
ORANGE COUNTY

11

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

[black redaction bars covering lines 1 through 13]

Defendants contend that no steps could possibly have been taken towards a tender offer because the parties had "contractually agreed *not* to pursue a tender offer," because the board had not yet authorized a tender offer, and because Defendants' fact witnesses said so.  Opp. 25-29.  In fact, Valeant only agreed not to "launch[]" a tender offer *unilaterally*.  Ex. 34 at § 1(d).  The absence of board approval to "commence" a tender offer says nothing about whether substantial steps were taken to facilitate that end.  And self-serving testimony (that rests on facially dubious reasoning) is entitled to little weight.  *Cf. Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (rejecting self-serving deposition testimony).

The substantial steps admittedly taken by Valeant may well have been in furtherance of a hoped-for friendly "merger" with Allergan, which Defendants knew had no realistic probability of succeeding and which (of course) never happened.  Exs. 2, 4, 24, 85; Ex. 1 (Pearson Dep.) at 27:13-16, 97:22-23; Ex. 7 (Ackman Dep.) at 32:16-33:23, 41:17-42:7, 143:16-144:1; Ex. 6 (Doyle Dep.) at

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

12

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

164:22-165:7, 189:15-190:4; *see* Mills Rep. ¶¶ 19, 30.  But that does not mean they weren't also in furtherance of the tender offer that Valeant, in fact, commenced shortly thereafter.  Valeant did not start from scratch in May 2014 when, according to Defendants, Allergan stockholders came up with the purportedly radical and "crazy" idea to pursue a tender offer.  Opp. 25-26.



Defendants' assertion that highly sophisticated parties concocted, planned, and executed a more than $45 billion tender offer in a matter of weeks reaches beyond the ridiculous to the sublime.  *See* Ex. 121 at 185; Ex. 77; Choi Rep. ¶ 77; Ex. 140 (Mills Dep.) at 24:1-6;

That is particularly true because any reasonable company in Valeant's position *would* have contemplated the possibility of a tender offer.  As Plaintiffs' expert Joseph Mills explains, in 91 percent of the hostile acquisitions involving proxy battles waged since 2006, a tender offer was planned, threatened, or made. Mills Rep. ¶ 8.  Tender offers are powerful tools for hostile acquirers, and so any "reasonable acquirer planning to run a proxy contest in support of its hostile bid would understand that it would likely need to launch (or at the very least threaten) a tender offer in conjunction with a proxy contest." *Id.* at ¶¶ 9, 15-16.  Defendants' own experts have conceded as much.  Ex. 141 (Daines Dep.) at 28:3-15, 64:22-65:4, 113:24-114:10; Ex. 151 at 920–21.

Defendants nevertheless argue that no sane company would even consider making a tender offer because the target company would "put in place a poison pill preventing additional stock purchases."  Opp. 25-26.  There are at least three problems with this argument.  First, it skips a step.  A poison pill forecloses a tender offer only while the current board remains in place.  A critical part of any

1    hostile takeover strategy, including Defendants' here, is to replace the board of the

2    target company and then remove the poison pill.  Mills Rep. ¶¶ 25-27.  That is not

3    news to Defendants.  ████████████████████████████████████████████████

4    ██████████████████████████████████████████████████████████████████████

5    ██████████████████████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████  Second, Valeant's

8    own acquisition history demonstrates that even they do not believe what they say

9    in their brief.  Choi Rep. ¶¶ 78, 88.[6]  Third, that is precisely what happened here.  It

10   is hard to take seriously Defendants' argument that a tender offer would not have

11   been "viable" (Opp. 25) in February, or March, or April, when Valeant itself

12   commenced a tender offer in June.  Def. Ex. 15 (Schiller Dep.) at 233:24-234:1,

13   248:24-249:9; Def. Ex. 1 (Ackman Dep.) at 140:18-19, 271:9-274:14; Ex. 7

14   (Ackman Dep.) at 164:7-165:4.

15          **D.     Plaintiffs Are Likely To Succeed On Their Rule 14a-9 Claim**

16          Defendants contend that (i) Plaintiffs did not plead a disclosure claim with

17   respect to the September 2014 proxy solicitation ("September Statement"),

18   (ii) Defendants' duty to disclose was satisfied when they told stockholders this

19   lawsuit had been filed, and (iii) information about this case is already public.

20   Defendants do not address any of Plaintiffs' cases.  Mot. 32.  They do not seriously

21   dispute that the preliminary injunctive relief sought is an appropriate and

22   ─────────────────────

23   [6] In its attempted hostile takeover of Cephalon, Inc., Valeant informed stockholders that it was prepared to make a tender offer even though a poison pill was in place. Ex. 142 at 17-18.  Pearson provided a roadmap:  after obtaining the stockholder consents, Cephalon would set a date for the stockholder vote, Valeant would launch the tender offer, and then Valeant would replace the board with directors that would "remove the poison pill and other impediments to a tender offer."  Ex. 143 at 6, 10.  Aside from procuring financing and voting power through insider trading, Valeant's hostile takeover plan to acquire Allergan is virtually indistinguishable from its attempt to acquire Cephalon.

1   commonplace remedy for similar disclosure violations.[7]  To the extent Defendants

2   engage at all, their arguments miss the mark.

3       As an initial matter, Plaintiffs' Rule 14a-9 claim is properly pleaded.

4   Compl. ¶¶ 135-167.  The Complaint is more than sufficient to satisfy the liberal

5   notice pleading standard of Federal Rule of Civil Procedure 8(a).  Fed. R. Civ. P.

6   8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Complaint

7   specifically refers to all "Special Meeting proxy materials," as well as "subsequent

8   . . . statements regarding the proposed takeover."  Compl. ¶ 135.  The September

9   Statement relates to the Special Meeting and is a "subsequent" statement about the

10  proposed takeover.  It is also an outgrowth of the July 2014 proxy statement, is

11  closely related to the pleaded claim, and requests identical relief.  Both proxy

12  solicitations relate to the Special Meeting, lay out the proposals to be voted on at

13  the Special Meeting, contain a largely identical "Background of the Offer" section,

14  and are subject to the same regulatory scheme.  The cases on which Defendants

15  rely, in contrast, decline to consider "new" claims, or new requests for relief,

16  entirely different from those pleaded.  Opp. 37-38 (citing cases).

17      Defendants are also wrong when they contend that their disclosure duty is

18  satisfied by saying "Allergan filed this lawsuit."  *Id.* at 38.  Defendants must

19  disclose material information, and the Solicitation Material[8] fails to do so in two

---

20  [7] It is well-settled that there is no adequate remedy at law when stockholders are

21  forced to participate in an uninformed vote, especially one that bears on the future

22  independent existence of a corporation.  *Gen. Aircraft Corp. v. Lampert*, 556 F.2d

    90, 97 (1st Cir. 1977).  And, in circumstances where stockholder action is being

23  solicited on the basis of inadequate disclosures, courts consistently enjoin

    shareholder meetings or the voting of proxies until corrective disclosures are made.

24  *See, e.g.*, *St. Louis Police Ret. Sys. v. Severson*, 2012 WL 5270125, at *6–7 (N.D.

25  Cal. Oct. 23, 2012); *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp.

    2d 1141, 1152 (D. Kan. 2001); *ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1261

26  (Del. Ch. 2003).

27  [8] The Solicitation Material includes the September Statement (Ex. 138) and the

28  Form S-4 most recently amended on September 22, 2014 (Ex. 155).

1   important respects.  First, it does not inform Allergan stockholders *why* Valeant

2   and Pershing Square collaborated to facilitate Pershing Square's rapid acquisition

3   of a large block of Allergan shares.  ██████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████

7   ███████████        Not only does this information raise serious questions about

8   Valeant's financial stability, it also sheds light on Valeant's motivation for

9   acquiring Allergan:  to remedy Valeant's ailing balance sheet.  *See St. Louis Police*

10  *Ret. Sys.*, 2012 WL 5270125, at *5; *SEC v. Chicago Helicopter Indus.*, 1980 U.S.

11  Dist. LEXIS 17214, at *7 (N.D. Ill. Jan. 18, 1980) (noting "conduct which affects

12  the profitability or future of a particular corporation is substantially likely to be

13  important in investment decisions").  Second, the Solicitation Material does not

14  inform Allergan's stockholders that Valeant and Pershing Square embarked on

15  their hostile takeover scheme *knowing* that their conduct might violate federal

16  securities law.  *See, e.g.*, Exs. 2, 83; Ex. 34 at § 1(d); Ex. 131 at 53.  This

17  information is undoubtedly material.  *See United Paperworkers Int'l Union v. Int'l*

18  *Paper Co.*, 985 F.2d 1190, 1200 (2d Cir. 1993) (proxy statement violated Rule

19  14a-9 when it omitted risk of environmental law liability); Mot. 32 (citing cases).

20      And, contrary to Defendants' suggestion, corrective disclosures do not

21  become unnecessary simply because *Plaintiffs* have made public statements

22  bearing on the necessary disclosures.  *See Kohn v. Am. Metal Climax, Inc.*, 458

23  F.2d 255, 265 (3d Cir. 1972); *MacFadden Holdings, Inc. v. John Blair & Co.*,

24  1986 WL 1171567, at *8 (D. Del. May 5, 1986) ("A material omission in one

25  party's proxy materials cannot be excused by relying on a disclosure of that

26  information by the opposing party."); *Bertoglio v. Texas Int'l Co.*, 488 F. Supp.

27  630, 642 (D. Del. 1980).  That is particularly true where (as here) Defendants have

28  repeatedly disclaimed any possible insider-trading liability, calling Allergan's

LATHAM&WATKINS℠
ATTORNEYS AT LAW
ORANGE COUNTY
SF\5868614                                          16                    CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

claims "spurious" and characterizing the Complaint as nothing more than a "public relations document" aimed at delaying the Special Meeting.  Ex. 143; Valeant Answer (Dkt. 40) at 1; *see Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989) ("unqualified exuberance" refuting claims ordinarily renders "scrutiny by the press" inadequate to cure disclosure violations); *Hughes v. Dempsey-Tegeler & Co.*, 534 F.2d 156, 176 (9th Cir. 1976); *In re W. Union Sec. Litig.*, 120 F.R.D. 629, 638 (D.N.J. 1988); *cf. United Paperworkers*, 985 F.2d at 1200 (noting that it likely would not have considered the disclosures materially incomplete "had the Company's misleadingly self-laudatory statements not been made").

### III.   ALLERGAN AND ITS STOCKHOLDERS WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION

The narrowly tailored injunction Plaintiffs seek is appropriate and necessary to preserve the status quo pending final judgment.  Defendants' arguments to the contrary are without merit.

#### A.   Allowing Pershing Square to Vote its Illegally Obtained Shares Will Cause Irreparable Harm to Allergan and its Stockholders

Defendants contend that even if the Court finds they likely violated the federal securities laws, Pershing Square should nonetheless be allowed to vote the shares it obtained unlawfully.  They claim that the voting of unlawfully obtained shares is not a "cognizable harm"; that Pershing Square's proposals might succeed or fail even without Pershing Square's illegally obtained votes; and that, even if successful, Pershing Square's proposals, designed specifically to maximize the possibility of a Valeant takeover on terms favorable to Defendants, cannot possibly cause irreparable harm to Allergan and its shareholders.  Opp. 13-16.  None of Defendants' arguments withstands scrutiny.

First and foremost, voting shares that have been acquired unlawfully is irreparable harm.  *See ICN Pharms., Inc. v. Khan*, 2 F.3d 484, 491 (2d Cir. 1993)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

17

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1   ("it would certainly fall within the parameters of traditional injunctive relief" to
2   prevent insider trading defendant "from voting any illegally acquired stock in a
3   contest for control of [the company]").  If Defendants had complied with the law,
4   Pershing Square *would not own those shares today*:  it would have been forced
5   either to abstain from trading, or to disclose the inside information it had
6   obtained—both of which would have defeated Defendants' scheme.   Instead,
7   Pershing Square used its inside knowledge to obtain billions of dollars' worth of
8   Allergan stock from sellers who were unaware of the impending proposal.  From
9   an equity perspective, it is no different than if Pershing Square had simply stolen
10  the shares:  it does not legitimately own them, and it should not be permitted to
11  take advantage of its wrongdoing by voting them.  The Special Meeting is a critical
12  moment for Allergan:  one of the proposals seeks to remove a majority of the
13  board, and others seek to amend the bylaws.  These are significant decisions, and
14  they should be made by the legitimate stockholders who bought shares based on
15  publicly available information.

16       Further, allowing Pershing Square to vote its illegally acquired bloc would
17  let Defendants retain an unwarranted advantage in the corporate control battle.  As
18  Professor Choi explained, "the presence of a toehold that's acquired surreptitiously
19  changes the nature of the playing field that this takeover contest will take place
20  on."  Ex. 152 (Choi Dep.) at 99:3-101:14; *see id.* at 103:4-18.  *Ex ante*, alternate
21  bidders who might have emerged to the benefit of Allergan stockholders are
22  deterred.  *See Hanna Mining Co. v. Norcen Energy Res. Ltd.*, 574 F. Supp. 1172,
23  1202 (N.D. Ohio 1982) (equitable relief necessary where, "by reason of the large
24  block of stock acquired by [the defendant,] . . . [it] has an advantage over any other
25  potential offeror"); *Gen. Steel Indus. Inc. v. Walco Nat'l Corp.*, 1981 WL 17552, at
26  *6 (E.D. Mo. Nov. 24, 1981); Ex. 153 at *2.  *Ex post*, stockholders who might
27  otherwise be inclined to side with management may instead align with Pershing
28  Square out of concern that the bloc will be used to hinder management's efforts to

LATHAM&WATKINS LLP   SF\5868614
ATTORNEYS AT LAW
ORANGE COUNTY
                                18              CASE NO. 8:14-CV-01214-DOC (ANx)
                                                PLAINTIFFS' REPLY ISO MOTION FOR
                                                PRELIMINARY INJUNCTION

1    implement its long-term strategic plan to improve the Company's value.   Choi

2    Rep. ¶¶ 56-63.   Permitting Defendants to benefit from this improperly obtained

3    advantage is unquestionably a "cognizable harm" under the federal securities laws.

4    Were it not, what purpose do those laws serve?

5         Second, Defendants do not (and cannot) dispute that Pershing Square's

6    substantial position in Allergan—9.7% of the outstanding shares—might well be

7    outcome-determinative at the Special Meeting.   Allowing Pershing Square's

8    illegally obtained votes to provide the potential margin of victory would be

9    inconsistent with the remedial purposes of the Williams Act, and would do nothing

10   to deter others from following Valeant's playbook in the future.   *See* Ex. 153 at *2

11   (equitable relief warranted in cases of deliberate Williams Act violations, because

12   "absent [a] . . . remedy removing the wrongfully obtained blocking position,

13   stockholders could be irreparably harmed and the defendant would be permitted to

14   benefit from its wrongful conduct").

15        Third, Defendants are wrong that "an affirmative vote of stockholders in

16   accordance with governing corporate law" either to remove directors, recommend

17   the nomination of new ones, or clear the way for a merger, are *ipso facto* non-

18   harmful acts that do not justify an injunction.  Opp. 13-15.  A stockholder's right to

19   "vote for the directors [it] wants to oversee the firm" is indeed "sacrosanct,"

20   *EMAK Worldwide, Inc. v. Kurtz*, 50 A.3d 429, 433 (Del. 2012)—but that right

21   presumes a playing field that has not been tilted through violations of federal

22   securities law.   The entire point of Defendants' arrangement was to do exactly

23   that—obtain a toehold in Allergan, call for a special meeting, use their position of

24   leverage to maximize Valeant's chance of success in a proxy context, and thereby

25   facilitate Valeant's takeover.  *See supra* at 11-15; Mot. 9-11.[9]

26   _____

27   [9] Defendants' assertion that this relief would "tilt the playing field" misses the
     mark.  Opp. 1.  As an initial matter, Defendants are simply wrong as to Proposals
28   2-8.  PS Fund 1's 9.7% block would not be included in the figure used to tabulate

Relatedly, Defendants' claim that their proposal to remove six Allergan directors and recommend replacements "does not actually put any new member on the Board" is disingenuous. Opp. 14. A vote to remove incumbent directors would obviously be a significant event in the overall takeover battle; otherwise, Defendants would not be working so hard to accomplish just that.[10] More fundamentally, it would serve as the predicate for an election that *would* "actually put . . . new member[s] on the Board." *Id.* Defendants fail to mention that under Delaware law, holders of 10% of a corporation's outstanding stock can call for an election when the directors remaining in office are less than a majority of the full board. DEL. CODE ANN. tit. 8, § 223(c). Pershing Square has publicly stated that it will use its 9.7% stake to call for such an election and thus override any decision by the remaining directors. *See* Ex. 154 at 26.

If Valeant is permitted to accomplish these steps at the Special Meeting on

---

shareholder support or outstanding shares. DEL. CODE ANN. tit. 8, § 216(2) (requiring "the affirmative vote of the majority of shares present in person or represented by proxy at the meeting and entitled to vote"); Ex. 134, Art. 7 (requiring "the affirmative vote of at least a majority of the outstanding shares of stock of the Corporation entitled to vote"). In any event, absent a contrary charter provision, directors may be removed without cause by "a majority of the shares then entitled to vote." DEL. CODE ANN. tit. 8, § 141(k) (2014). If Pershing Square's shares are not counted toward that total as a result of this Court's order, that is merely the consequence of Defendants' decision to violate the federal securities laws.

[10] To the Delaware court, Defendants repeatedly averred that the meeting was "critically important" to their takeover efforts. *See* Ex. 112 at 1; Ex. 150 at 15. To the press and the analyst community, Defendants claimed that the Special Meeting would set up "the execution of the transaction without the [Allergan] board," and create a situation in which "the board has less leverage to negotiate" on behalf of Allergan's stockholders. Ex. 73 at 12. Yet, in this court, Defendants downplay the importance of the meeting and treat each of the eight proposals in piecemeal fashion. Opp. 12-14. The *entire point* of Defendants' "toehold" has always been to maximize their chances of success in a unitary proxy contest that will be the critical turning point in the Valeant takeover plan. It is far too late for Defendants to disclaim their own strategy.

the strength of Pershing Square's unlawfully obtained shares, the harm to Allergan and its stockholders cannot be unwound after the fact. *Defendants do not (and cannot) dispute this*. *See* Mot. 34-35 (citing cases).[11]

### B. The Injunction Plaintiffs Seek Is Commonplace and Narrowly Tailored to Prevent Irreparable Harm Pending Final Judgment

Plaintiffs seek a preliminary injunction prohibiting Defendants (i) from voting the unlawfully acquired shares, and (ii) from voting proxies they solicited absent supplemental corrective disclosures. Defendants contend that such an injunction is unprecedented and unnecessary, and would amount to "effectively permanent" relief rather than a preservation of the status quo. Opp. 19. Aside from the fact that Defendants' multi-billion-dollar insider-trading scheme is itself "unprecedented," Defendants are wrong.

Enjoining a stockholder from exercising rights attendant to shares acquired through a violation of the Williams Act is a *common* remedy. *See, e.g.*, *ICN Pharms.*, 2 F.3d at 491 ("It would certainly fall within the parameters of traditional injunctive relief to preclude Khan from voting any illegally acquired stock in a contest for control of ICN."); *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204, 206 (8th Cir. 1976); *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 516 F.2d 172, 181, 192–95 (2d Cir. 1975), *rev'd on other grounds sub nom. Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1 (1977); *Tully v. Mott Supermarkets, Inc.*, 337 F. Supp. 834, 852 (D.N.J. 1972), *rev'd on other grounds*, 540 F.2d 187 (3d Cir. 1976); *Buckhorn, Inc. v. Ropak Corp.*, 656 F. Supp. 209, 237 (S.D. Ohio 1987); Mot. 38.

Tellingly, Defendants do not discuss any of these on-point cases. Instead,

---

[11] Defendants' scattershot complaints about the special-meeting bylaws are also immaterial. Ex. 156 (Subramanian Dep.) at 63:3-64:6, 126:13-128:24, 165:19-166:15. Allergan has committed to hold a special meeting on December 18 and, at that meeting, the Company's legitimate stockholders can decide for themselves whether to amend those bylaws or keep them in force.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

21

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

they point to several cases where courts have denied the "sterilization" of shares for reasons (disclosure violations) that do not apply here. In *CSX Corp. v. Children's Investment Fund Management (UK) LLP*, 654 F.3d 276, 287 (2d Cir. 2011), a Section 13(d) case, the court held that sterilizing the defendant's disputed shares was "inappropriate" because "the required disclosures were made in sufficient time for shareholders to cast informed votes."   Similarly, in *Gearheart Industries*, the court held that permanently enjoining a tender offer or "sterilizing voting rights" of the tender offeror, when he had since "cured any previous violation of Section 13(d)," was an "overdrastic course of action."   741 F.2d at 715–18.  And in *Ranger Oil*, the court merely held that there was no need to enjoin *the tender offer itself* based on insider trading under Rule 14e-3, because the harm resulting from *the tender offer* could be redressed by damages; the case had nothing to do with whether the improperly obtained shares could be *voted*, an entirely different sort of harm.  2000 WL 33115906, at *8–9.  None of those cases stand for the proposition that retrospective damages to contemporaneous traders is the only appropriate remedy for violations of the Williams Act.  Opp. 17; *see supra* § II.A.[12]

   In the end, Defendants' claim that enjoining their illegally obtained would "stack the deck" is the proverbial pot calling the kettle black.  Opp. 19.  The deck has already been stacked by Defendants' unlawful conduct.  The playing field is already unlawfully tilted toward Valeant.   The stockholder base has already substantially changed, and the momentum towards the inside-trader's preferred acquirer has already been created.  Choi Rep. ¶¶ 26-31.  Preventing Pershing Square from voting its unlawfully acquired shares is the closest to preserving the

---

[12] Indeed, the preliminary injunctive relief sought here is quite modest relative to other interim remedies courts have imposed for Section 14(e) violations. *See* Mot. 39 & n.45.  It would allow the special meeting to go forward; it would simply quarantine Defendants' illegally acquired shares.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY
SF\5868614
22
CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1   status quo that is now possible, and is narrowly tailored to the harm.

2   **IV.     THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR**

3            **GRANTING A PRELIMINARY INJUNCTION**

4            ***Balance of the Equities.***  The parties agree on the standard:  whether the

5   plaintiff would face more serious harm without an injunction than the defendant

6   would if one were granted.  *Arc of Cal. v. Douglas*, 757 F.3d 975, 991–92 (9th Cir.

7   2014); Opp. 18.    If a preliminary injunction is denied, Allergan and its

8   stockholders will suffer irreparable harm, *see supra* § III, and Defendants will reap

9   the benefits of their illicit scheme. ███████████████████████████████████

10  ████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████

13  ████████████████████████  That is the very definition of "warehousing" (Mot.

14  22-25), and its sole purpose was to give Valeant an unfair advantage in the proxy

15  contest.

16          In contrast, if a preliminary injunction is granted, any harm to Defendants

17  would be minimal.  The Special Meeting will occur.  And the proxies of Allergan

18  stockholders can be voted, as long as the necessary corrective disclosures are

19  made.[13]  For these reasons, courts have routinely concluded that the balance of

20  equities favors Plaintiffs in similar circumstances.  *See Chicago Stadium*, 530 F.2d

21  at 208; *Koppers*, 689 F. Supp. at 1407; *Chambers v. Briggs & Stratton Corp*., 863

22  F. Supp. 900, 906–08 (E.D. Wis. 1994).

23          ***Public Interest***.  Defendants strangely accuse Plaintiffs of "ignor[ing]" this

---

24  [13]   Defendants' claim that a preliminary injunction is tantamount to

25  "disenfranchisement for the purposes of the December 18 Special Meeting" (Opp.

26  19-20), proves how little they have at stake.  Their entire harm is confined to the
    events of a single meeting, and there are myriad other ways that Defendants can

27  pursue their takeover plans.  If nothing else, there will be a statutorily required

28  *annual* meeting by approximately May, should Defendants prevail at trial.

consideration.  *But see* Mot. 37-40.  Meanwhile, their arguments about the public interest are duplicative of their arguments on irreparable harm and balance of the equities, and fail for the same reasons.  Opp. 20-21.  Pershing Square is not an innocent stockholder.  And Defendants have not explained how the public interest is served when an insider trader is allowed to vote its unlawfully acquired shares and further tilt the playing field in favor of the tender offeror.

## V.   Defendants' "Unclean Hands" Affirmative Defense is Without Merit

As an afterthought, Defendants argue that even if they likely violated the federal securities laws, even if there is irreparable harm, and even if the balance of equities and public interest weigh in favor of a preliminary injunction, the Court should nevertheless deny relief because Plaintiffs too acted "inequitab[ly]."  Opp. 38-40.  Defendants argue that Allergan publicly raised questions about the value of the Valeant stock being offered to Allergan's stockholders.  As will be discussed in Plaintiffs' response to Defendants' motion to amend their counterclaims, that is simply not true.  Allergan has not misled the market by expressing the views of its management about Valeant's business model.  *Graphic Scis., Inc. v. Int'l Mogul Mines, Ltd.*, 397 F. Supp. 112, 127 (D.D.C. 1974) (rejecting unclean hands defense in hostile takeover case where disclosures were "no more than the views of . . . management" and were "not expressed in an inflammatory or misleading way").  And Allergan was far from alone in expressing concerns about Valeant's business.  *See, e.g.*, Plaintiffs' Answer (Dkt. 71) at 4: ██████████████████████████

Moreover, even Defendants acknowledge that the inequitable conduct alleged must actually be "related" to the relief requested.  Opp. 39.  In fact, it must bear an "immediate and necessary relation to the equity that [he] seeks in respect of the matter in litigation."  *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, at *25–26 (9th Cir. 2014) (citation omitted).  Here, there is no such relationship.  Defendants claim that Allergan made intentionally misleading statements about Valeant to drive down the value of its stock.  But the remedy Plaintiffs seek is to prevent

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

24

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

Defendants from voting its unlawfully acquired shares at the upcoming Special Meeting and to compel Defendants to make required disclosures before being permitted to vote their proxies.  There is no nexus between the alleged misconduct and the relief sought, and courts have readily rejected an unclean hands defense in analogous circumstances.  *See, e.g.*, *Ranger Oil*, 2000 WL 33115906, at \*12; *Nowling v. Aero Servs. Int'l, Inc.*, 734 F. Supp. 733, 743–44 (E.D. La. 1990).

As Judge Friendly once observed, "the innocent stockholder would find cold comfort in a result that because both the offeror and the management had violated the statute all relief should be denied." *Elec. Specialty Co.*, 409 F.2d at 948 n.7.[14] Defendants misappropriated over a billion dollars from Allergan's former stockholders by trading on inside information, and left Allergan's remaining stockholders with a distorted (and uniformed) choice.  If Defendants are permitted to see its plan to fruition, others will be encouraged to do the same.  Untold wealth will be diverted from ordinary stockholders and investor confidence in the market will be undermined—exactly what the Williams Act was meant to prevent.

## VI.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion and issue the preliminary injunction reflected in Plaintiffs' revised proposed order filed concurrently herewith.

Dated:  October 23, 2014                         LATHAM & WATKINS LLP


By: /s/ Peter A. Wald

Peter A. Wald

---

[14] District courts in the Ninth Circuit have accordingly refused to apply the unclean hands doctrine when the relief sought is in the public interest.  *EEOC v. Recruit U.S.A., Inc.*, 939 F.2d 746, 753 (9th Cir. 1991); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1189–90 (C.D. Cal. 2002); *Westlands Water Dist. v. U.S. Dep't of the Interior, Bureau of Reclamation*, 1994 U.S. Dist. LEXIS 6276, at \*62 (E.D. Cal. Apr. 28, 1994).

LATHAM&WATKINSLLP
Attorneys At Law
Orange County
SF\5868614                                        25                    CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
Peter A. Wald (Bar No. 85705)
*peter.wald@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538

LATHAM & WATKINS LLP
Michele D. Johnson (Bar No. 198298)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Fl.
Costa Mesa, California 92626

LATHAM & WATKINS LLP
Colleen C. Smith (Bar No. 231216)
*colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, California 92130
Telephone: +1.858.523.5400

LATHAM & WATKINS LLP
Blair Connelly (Bar No. 174460)
*blair.connelly@lw.com*
885 Third Avenue
New York, NY 10022-4834
Telephone: +1.212.906.1658

WACHTELL LIPTON ROSEN &
KATZ
William D. Savitt (*pro hac vice*)
Bradley R. Wilson (*pro hac vice*)
51 W. 52nd Street
New York, NY 10019

Attorneys for Plaintiffs
ALLERGAN, INC. and KARAH
PARSCHAUER

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

SF\5868614

26

CASE NO. 8:14-CV-01214-DOC (ANx)
PLAINTIFFS' REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION