1   LATHAM & WATKINS LLP
        Peter A. Wald (Bar No. 85705)
2       *peter.wald@lw.com*
3   505 Montgomery Street, Suite 2000
    San Francisco, CA 94111-6538
    Telephone: (415) 395-8006
4   Facsimile: (415) 395-8095
        Michele D. Johnson (Bar No. 198298)
5       *michele.johnson@lw.com*
6   650 Town Center Drive, 20th Floor
    Costa Mesa, California 92626-1925
    Telephone: (714) 540-1235
7   Facsimile: (714) 755-8290

8   WACHTELL, LIPTON, ROSEN & KATZ
        William D. Savitt (*pro hac vice*)
9       *wdsavitt@wlrk.com*
        Bradley R. Wilson (*pro hac vice*)
10      *brwilson@wlrk.com*
11  51 West 52nd Street
    New York, New York 10019
    Telephone: (212) 403-1329
12  Facsimile: (212) 403-2329

13  Attorneys for Plaintiffs ALLERGAN, INC.
    and KARAH H. PARSCHAUER and
14  Counterclaim-Defendants DAVID PYOTT,
    DEBORAH DUNSIRE, MICHAEL R.
15  GALLAGHER, TREVOR M. JONES,
    LOUIS J. LAVIGNE, RUSSELL T. RAY,
16  PETER J. MCDONNELL, TIMOTHY D.
    PROCTOR, and HENRI A. TERMEER
17

18              UNITED STATES DISTRICT COURT

19              CENTRAL DISTRICT OF CALIFORNIA

20                    SOUTHERN DIVISION

21

22  | ALLERGAN, INC., a Delaware corporation, and Karah H. Parschauer, an individual, | Case No.: 8:14-cv-01214-DOC-(ANx) |
    | --- | --- |
23  | | Hon. David O. Carter |
    | | Courtroom: 9D |
24  |                    Plaintiffs, | |
25  |              v. | **ANSWER OF COUNTERCLAIM-DEFENDANTS ALLERGAN, INC., DAVID PYOTT, DEBORAH DUNSIRE, MICHAEL R. GALLAGHER, TREVOR M. JONES, LOUIS J. LAVIGNE, RUSSELL T. RAY, PETER J. MCDONNELL, TIMOTHY D. PROCTOR, AND HENRI A. TERMEER** |
26  | VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, AGMS, INC., PERSHING SQUARE CAPITAL MANAGEMENT, L.P., PS | |
27
28

SF\5875961.13

| | |
|---|---|
| 1   MANAGEMENT, GP, LLC, PS FUND 1, LLC and WILLIAM A. ACKMAN, an individual, and Does 1-10, | **TO AMENDED COUNTERCLAIMS OF VALEANT AND PERSHING SQUARE** |
| 2 | |
| 3 | |
| 4          Defendants. | |

1    MANAGEMENT, GP, LLC, PS
     FUND 1, LLC and WILLIAM A.
2    ACKMAN, an individual, and Does 1-
     10,
3
4                   Defendants.

5

6    VALEANT PHARMACEUTICALS
     INTERNATIONAL, INC., VALEANT
7    PHARMACEUTICALS
     INTERNATIONAL, AGMS, INC., PS
8    FUND 1, LLC and WILLIAM
     ACKMAN,
9
10
                    Counterclaimants,
11
12          v.

13   ALLERGAN, INC.; DAVID PYOTT;
     DEBORAH DUNSIRE; MICHAEL R.
14   GALLAGHER; TREVOR M. JONES;
     LOUIS J. LAVIGNE; RUSSELL T.
15   RAY; PETER J. MCDONNELL;
     TIMOTHY D. PROCTOR and HENRI
16   A. TERMEER,
17
18                  Counterclaim-
                    Defendants.
19

20

21

22

23

24

25

26

27

28

## **PRELIMINARY STATEMENT**

The Amended Counterclaims ("AC") filed by Defendants and Counterclaimants[1] add nothing of substance to their original Counterclaims (Dkt. No. 42) and bear no relationship to the core issue presented in this litigation: whether Valeant and Pershing Square violated the insider-trading prohibitions of the Exchange Act.  The AC's allegations, which the Court termed "mudslinging" (Oct. 28, 2014 Hearing Tr. (Vol. 2) (Dkt. No. 225) at 64:22-65:2), are not relevant to Plaintiffs' claims and provide no defense for Defendants' unlawful conduct.

On the merits, the allegations of the AC are false and thus fail to state a claim against the Counterclaim Defendants.[2]  Counterclaimants have combed the discovery record for out-of-context sound bites and have mischaracterized the evidence in seeking to establish that Allergan and its Chief Executive Officer, David Pyott, acted unlawfully in responding to Valeant's unsolicited takeover bid. Without exception, Counterclaimants' new allegations about Allergan's supposed scheme to artificially depress Valeant's stock price are demonstrably untrue.

For example, Counterclaimants allege that after Allergan's investment advisor Goldman Sachs ("Goldman") "informed Allergan that it would need to obtain information from Valeant to conduct due diligence that was detailed and 'real,' [citing AC Ex. 4], Allergan rejected the recommendation" from Goldman. AC ¶ 42.  The evidence is to the contrary.  In the email that is Counterclaimants' Exhibit 4, the Goldman banker stated:  "Were we ever to get to the point of negotiating with [Valeant], we would have the opportunity to do real, detailed due diligence."  AC Ex. 4.  Counterclaimants also omit the Goldman banker's

---

[1] Counterclaimants are Valeant Pharmaceuticals International, Inc. ("Valeant"),Valeant Pharmaceuticals International, AGMS, Inc., PS Fund 1, LLC ("Pershing Square") and William Ackman ("Ackman").

[2] Counterclaim Defendants are Allergan, Inc. ("Allergan" or the "Company"), David Pyott, Deborah Dunsire, Michael R. Gallagher, Trevor M. Jones, Louis J. Lavigne, Russell T. Ray, Peter J. McDonnell, Timothy D. Proctor and Henri A. Termeer.

comment that Allergan stockholders need to hear "the issues with [Valeant's] model, organic growth, cash flow, etc. now," and remarked that it would be "telling" about these problems if Valeant refused to allow further diligence. *Id.* Characterizing the statement, "were we ever to get to the point of negotiating," as advice that Allergan would need to get information from Valeant that Allergan ignored is an egregious falsehood.

Similarly, contrary to Counterclaimants' allegations, Goldman did not disagree with Allergan's conclusions that "Valeant's accounting was opaque and problematic." AC ¶ 42. On the contrary, the evidence shows that Goldman supported Allergan's views. *E.g.*, Katzman Dep. Tr. 127:1-10 ("There are risks, as I said earlier in this deposition, around Valeant's business model. That's well documented inside and outside for the world. A lot of people question that. Those risks are real and like a lot of companies have risks. Valeant's got a lot of people who think there's more risk.").

Counterclaimants also allege that because Goldman underwrote an offering of Valeant's securities in June 2013, this necessarily means that Goldman disagrees with Allergan's view that a Valeant merger would not be in the best interests of Allergan's stockholders. AC ¶¶ 50-51. In fact, during the underwriting process for that offering, Goldman identified the very issues that concern Allergan's board today—such as Valeant's failure to manage its debt load and retain key talent. *See* June 10, 2013 Form S-3ASR[3] at 5; June 19, 2013 Form 424B5[4] at S10-11, 6-7.

Further, the AC misleadingly quotes from the analyst reports it cites. For example, Counterclaimants cite a report from Bank of America Merrill Lynch

---

[3] Available at https://www.sec.gov/Archives/edgar/data/885590/000119312513252402/d551734ds3asr.htm

[4] Available at https://www.sec.gov/Archives/edgar/data/885590/000119312513263496/d554540d424b5.htm

("BAML") as evidence that analysts "estimate that a transaction with Valeant would result in $2 billion in cost synergies, contravening Allergan's allegations." AC ¶ 49.  But these potential synergies reflected nothing more than modeling assumptions—and BAML, in fact, considered many different scenarios, including those in which no synergies at all were realized:

**Sensitivity to cost synergies**

Table 3 shows the EPS accretion/dilution sensitivity for the initial scenario ($150/share, blended tax rate) to cost synergies up to $2.5bn.

Table 3: Sensitivity of accretion/dilution to cost synergies

| ($150/share; blended tax rate) | 2015E | 2016E | 2017E | 2018E |
|---|---|---|---|---|
| No cost synergies | -23% | -20% | -18% | -16% |
| $0.5bn of cost synergies | -18% | -13% | -12% | -10% |
| $1.0bn of cost synergies | -12% | -7% | -6% | -5% |
| $1.5bn of cost synergies | -7% | -1% | 0% | 1% |
| $2.0bn of cost synergies | -2% | 6% | 6% | 6% |
| $2.5bn of cost synergies | 4% | 12% | 12% | 12% |

Source: BofA Merrill Lynch Global Research

AC Ex. 10 at 3-4.  Counterclaimants' selective and misleading quotation of documents, when compared to the evidence itself, underscores just how meritless the AC is.

Counterclaimants also level a series of unwarranted personal attacks against Mr. Pyott, all of which are unsupported by the record.  For instance, the AC claims that Mr. Pyott "cut out" Allergan's then-Vice President of Corporate Development David Lawrence from "the campaign against Valeant," after Mr. Lawrence suggested that Mr. Pyott not use a certain presentation slide about Bausch & Lomb. AC ¶¶ 65-66.  Each fact in this syllogism is contradicted by the evidence.  First, Mr. Lawrence did not say that the presentation slide was unsupported; instead, he said that "*if*" Valeant could refute the points on the slide, based on information then unknown to Allergan, Allergan could lose credibility.  AC Ex. 1.  Mr. Pyott expressed a contrary view, based on his belief that the sources supporting the presentation slide were credible.  *Id.*  Second, Mr. Pyott did not "cut out" Mr. Lawrence from anything:  instead, Mr. Lawrence's failure to be included on a

1  phone call the morning of this email exchange was the result of a mistake by

2  Goldman—not a decision by Mr. Pyott:

| From: | Edwards_Jeff <Edwards_Jeff@Allergan.com> |
|---|---|
| Sent: | Friday, July 11, 2014 10:56 AM |
| To: | Lawrence_David |
| Subject: | Re: Have call into Treska re Stones·Crumbs |

The call today was a mistake by Goldman. You need to be on those calls. Valeant is vial deck was a waste of your time. Banks have not shown me anything for Monday either.

Sent from my iPhone

9  AC Ex. 2; *see also* Pyott Dep. Tr. 195:18-196:1. ("[A]lways on a work team I

10 encourage people to speak up and give their point of view.  And I take it under

11 consideration.  And at the end of the day that's part of my job as CEO, to decide on

12 balance, should we do A or B or nothing.  And clearly I took the decision to

13 proceed on this basis.  And when I look at the chart, based on the information

14 sources we have, I believe that is highly accurate and correct.").

15      Counterclaimants also allege that Allergan's former CFO, Jeff Edwards, was

16 forced to lie about the reason for his departure—tactlessly questioning the personal

17 reasons for Mr. Edwards' resignation.  AC ¶¶ 62-63.  The email cited by

18 Counterclaimants fully corroborates Mr. Edwards's stated reasons for his

19 departure:

**From:** Edwards_Jeff
**Sent:** Monday, June 30, 2014 1:07 PM
**To:** Edwards_Jeff
**Subject:** FW: Allergan/Edwards Plans-Updated June 30

Consistent with my prior communication with Mr. Pyott and/or Mr. Sherman on or around March 2, March 29, April 11 and on numerous separate occasions in June, my plans to depart Allergan remain unchanged. I have previously indicated that I will remain in my role through our second quarter earnings release. To the extent the Company would like my assistance for several days post earnings release, I can make myself available to you through July 25. From that point, I intend to utilize the remainder of my accrued vacation making my official departure date somewhere around September 29. It is truly unfortunate that the Valeant matter emerged following my communication of the decision and reasons for the decision. Given the nature of the reasons provided, I am obligated to fulfill my commitment to my family. I am unwavering on this commitment. Likewise, I want to do the right thing for the Company, however; given the very limited amount of time remaining between now and my planned departure date, am very concerned with what process will be put in motion to address the situation.

27 AC Ex. 15.  These facts were uniformly supported by the record evidence,

28 including deposition testimony by Allergan independent director Timothy Proctor:

1   I think we even had a couple of board members talk to Edwards as
    the time for his departure came closer to be sure that, you know,
2   there was nothing he wanted to tell us before he left or to be sure
    that he wasn't signaling some serious reservations about our
3   business strategies or approaches or compliance status or anything
    else.  He was very insistent and clear that he had every confidence
4   in the company and the management and the way things are going
    but he had some personal matters that were compelling.  I never
5   inquired as to what those personal family  matters were and I have
    never been told.

6

7   Proctor Dep. Tr. 162:12-163:7.

8        It is the responsibility of Allergan and its directors to act in the best interests

9   of the Company's stockholders and to ensure that, if any merger is consummated,

10  the sellers of Allergan equity are not receiving fool's gold in return.  Indeed,

11  directors have a fiduciary responsibility to "provide stockholders with all material

12  facts within their control that a reasonable stockholder would consider important in

13  deciding whether to seek appraisal or accept the merger consideration."  *Nagy v.*

14  *Bistricer*, 770 A.2d 43, 59-60 (Del. Ch. 2000) (internal quotation and citation

15  omitted).  If the concerns expressed by Allegan and many others regarding

16  Valeant's business model and questionable accounting practices impacted the price

17  of Valeant's stock, that is simply the result of the market's independent assessment

18  of those concerns and resulting judgment about their accuracy.  In a situation

19  where Valeant is offering its stock as consideration for the proposed transaction,

20  Allergan's board was duty-bound to conduct such a probing inquiry.  The record

21  facts do not support Counterclaimants' irrelevant and unsupported smear

22  campaign.

23                              **ANSWER**

24       1.       Counterclaim Defendants admit that Valeant proposed a merger in

25  April 2014 but deny that the proposal included a substantial premium or that it

26  would adequately and fairly compensates Allergan stockholders in light of the true

27  intrinsic values of Valeant's and Allergan's stock.  Counterclaim Defendants admit

28  that Allergan's Board rejected the proposal.  To the extent Paragraph 1 purports to

1  describe, characterize, or quote the Glass Lewis report, the report speaks for itself,

2  should be read as a whole, and provides only as stated therein.  Counterclaim

3  Defendants respectfully refer the Court to the report for a full and complete

4  statement of its content.  Counterclaim Defendants further assert that any

5  statements from Glass Lewis are irrelevant to this lawsuit.  Counterclaim

6  Defendants are informed and believe that a May 13, 2014 conversation between

7  Mr. Ackman and Mr. Pyott was recorded, but deny that anyone at Allergan

8  recorded the call between Mr. Pyott and Mr. Ackman or had any knowledge of any

9  such recording at the time of the call.  Counterclaim Defendants deny the

10  allegations in Paragraph 1 to the extent that they imply that the call between Mr.

11  Pyott and Mr. Ackman was recorded by Allergan—or anyone else, at Allergan's

12  request or with Allergan's knowledge—unlawfully, or for the purpose of gaining

13  any litigation advantage or any other nefarious purpose.  Counterclaim Defendants

14  lack knowledge or information sufficient to form a belief as to the truth of the

15  allegations in this paragraph regarding Mr. Ackman's knowledge or belief and

16  therefore deny each and every such allegation.  Counterclaim Defendants deny the

17  remaining allegations in this paragraph.

18       2.    To the extent the allegations in Paragraph 2 call for legal conclusions,

19  Counterclaim Defendants need not respond.  If a response is required,

20  Counterclaim Defendants deny all such allegations, including that Counterclaim

21  Defendants violated any applicable securities law.  Counterclaim Defendants deny

22  the remaining allegations in this paragraph.

23       3.    Counterclaim Defendants deny the allegations in Paragraph 3.

24       4.    Counterclaim Defendants deny the allegations in Paragraph 4.

25       5.    Counterclaim Defendants deny the allegations in Paragraph 5.

26       6.    To the extent the allegations in Paragraph 6 call for legal conclusions,

27  Counterclaim Defendants need not respond.  If a response is required,

28  Counterclaim Defendants deny all such allegations, including that Counterclaim

1  Defendants violated any applicable securities law.  To the extent Paragraph 6

2  purports to describe, characterize or quote the Exchange Act and the rules

3  promulgated thereunder, the securities laws speak for themselves, should be read

4  as a whole, and provide only as stated therein.  Counterclaim Defendants

5  respectfully refer the Court to the Exchange Act and the rules promulgated

6  thereunder for a full and complete statement of its content.  Counterclaim

7  Defendants deny the remaining allegations in this paragraph.

8  **JURISDICTION AND VENUE**

9  7.    To the extent the allegations in Paragraph 7 call for legal conclusions,

10  Counterclaim Defendants need not respond.

11  8.    To the extent the allegations in Paragraph 8 call for legal conclusions,

12  Counterclaim Defendants need not respond.  Counterclaim Defendants admit that

13  Allergan is headquartered in this District and conducts continuous and systematic

14  business activities here.  Counterclaim Defendants admit that the individual

15  defendants are directors of a company headquartered in this District.  Counterclaim

16  Defendants deny the remaining allegations in this paragraph.

17  9.    To the extent the allegations in Paragraph 9 call for legal conclusions,

18  Counterclaim Defendants need not respond.

19  **THE PARTIES**

20  10.    Counterclaim Defendants lack knowledge or information sufficient to

21  form a belief as to the truth of the status of Pershing Square Capital Management,

22  L.P. as a registered investment advisor and on that basis deny that allegation.

23  Counterclaim Defendants admit the remaining allegations in this paragraph.

24  11.    Counterclaim Defendants admit the allegations in Paragraph 11.

25  12.    To the extent the allegations in Paragraph 12 call for legal

26  conclusions, Counterclaim Defendants need not respond.  Counterclaim

27  Defendants admit that PS Fund 1 LLC owns 28,878,538 shares of Allergan stock.

28  Counterclaim Defendants lack knowledge or information sufficient to form a belief

1   as to the truth of the allegations in this paragraph and therefore deny each and

2   every such allegation.

3         13.     Counterclaim Defendants admit the allegations in Paragraph 13.

4         14.     Counterclaim Defendants deny that the exchange offer is Pershing

5   Square's.  Counterclaim Defendants admit the remaining allegations in Paragraph

6   14.

7         15.     Counterclaim Defendants admit the allegations in Paragraph 15.

8         16.     To the extent the allegations in Paragraph 16 call for legal

9   conclusions, Counterclaim Defendants need not respond.  If a response is required,

10  Counterclaim Defendants deny all such allegations, including that Counterclaim

11  Defendants violated any applicable securities law.  Counterclaim Defendants admit

12  that David Pyott is the Chief Executive Officer of Allergan and the Chairman of

13  the Allergan Board of Directors.  Counterclaim Defendants admit that Mr. Pyott

14  has been the Chief Executive Officer of Allergan since January 1998 and the

15  Chairman of the Board of Directors since 2001.  Counterclaim Defendants admit

16  that Mr. Pyott served as President of Allergan from January 1998 until February

17  2006.  Counterclaim Defendants admit that, in the years 2011, 2012, and 2013,

18  total cash and non-cash compensation earned by, awarded, or paid to, Mr. Pyott

19  averaged $15.7 million annually.  Counterclaim Defendants admit that Allergan

20  granted Mr. Pyott 165,000 restricted stock units in 2012 to "recognize over a

21  decade of outstanding performance."  Counterclaim Defendants allege that the

22  restricted stock units were granted pursuant Allergan's 2011 Incentive Award Plan.

23  Counterclaim Defendants admit that Mr. Pyott sold 252,000 shares of Allergan

24  stock at an average price of $123.12 in the first quarter of 2014.  Counterclaim

25  Defendants admit that the shares were not sold pursuant to a 10b5-1 plan.

26  Counterclaim Defendants deny the remaining allegations in this paragraph.

27

28

1
2
3

17.     Counterclaim Defendants deny that they or Ms. Dunsire violated any applicable securities law or engaged in any otherwise culpable conduct. Counterclaim Defendants admit the remaining allegations in Paragraph 17.

4
5
6

18.     Counterclaim Defendants deny that they or Mr. Gallagher violated any applicable securities law or engaged in any otherwise culpable conduct. Counterclaim Defendants admit the remaining allegations in Paragraph 18.

7
8
9
10
11

19.     Counterclaim Defendants deny that they or Mr. Jones violated any applicable securities law or engaged in any otherwise culpable conduct. Counterclaim Defendants deny that Mr. Jones was appointed to the Board of Directors in 2005.  Counterclaim Defendants admit the remaining allegations in Paragraph 19.

12
13
14

20.     Counterclaim Defendants deny that they or Mr. Lavigne violated any applicable securities law or engaged in any otherwise culpable conduct. Counterclaim Defendants admit the remaining allegations in Paragraph 20.

15
16
17

21.     Counterclaim Defendants deny that they or Mr. Ray violated any applicable securities law or engaged in any otherwise culpable conduct. Counterclaim Defendants admit the remaining allegations in Paragraph 21.

18
19
20

22.     Counterclaim Defendants deny that they or Mr. McDonnell violated any applicable securities law or engaged in any otherwise culpable conduct. Counterclaim Defendants admit the remaining allegations in Paragraph 22.

21
22
23

23.     Counterclaim Defendants deny that they or Mr. Proctor violated any applicable securities law or engaged in any otherwise culpable conduct. Counterclaim Defendants admit the remaining allegations in Paragraph 23.

24
25
26

24.     Counterclaim Defendants deny that they or Mr. Termeer violated any applicable securities law or engaged in any otherwise culpable conduct. Counterclaim Defendants admit the remaining allegations in Paragraph 24.

27
28

## **FACTUAL ALLEGATIONS**

25.     Counterclaim Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny each and every such allegation.  Counterclaim Defendants assert that Pershing Square is controlled by its founder, Ackman, an "activist investor" who typically tries to make money by acquiring minority stakes in companies, and threatening their boards with proxy contests unless they take steps towards short-term increases in the stock price—often through a sale or other transaction.  Pershing Square has previously pursued widely known companies—including those listed in this paragraph, as well as Target, J.C. Penny and McDonald's—in some cases, extracting significant concessions from the target, and in others, failing to do so.  Pershing Square's present interest in Allergan comes on the heels of several recent high-profile stumbles, including Ackman's ill-fated bets against Herbalife and in support of J.C. Penney.

26.     Counterclaim Defendants admit that Valeant has asserted in various filings with the SEC and in other public releases that it is cash-flow positive, with substantial and rapidly growing cash earnings, good credit, and a low debt-to-earnings ratio.  To the extent Paragraph 26 purports to describe, characterize or quote these statements by Valeant, the statements speak for themselves, should be read as a whole, and provide only as stated therein.  Counterclaim Defendants respectfully refer the Court to the filings and releases for a full and complete statement of their content.  Nevertheless, Counterclaim Defendants deny that any such statements, even if true, would indicate that Valeant is a "successful" company—and certainly not when compared to the financial health of Allergan. For example:

•       With respect to Counterclaimants' allegations that Valeant is "cash-flow positive," Counterclaim Defendants respond that, on information and belief Valeant's financial performance is inferior to Allergan's on the basis of net cash

1   provided by operating activities on the cash flow statement.  In addition to having

2   superior cash flows provided by operating activities, Allergan's cash flow from

3   operations/average total liabilities and price to cash flow ratios exceed the

4   comparable measures for Valeant.  Further, Valeant's cash flow margin ratio

5   exceeds Allergan's only because Allergan's research and development expenses

6   are included in operating activities, while Valeant's "research and development

7   expenses" (acquired intangible assets) are reflected in cash flows from investing

8   activities.  Including amortization of intangible assets as a proxy for research and

9   development expense would result, on information and belief, in Valeant reporting

10  net cash used in operating activities for 2013 and 2012, and would reduce net cash

11  provided by operating activities for 2011 to a nominal amount.

12       •     With respect to Counterclaimants' allegations concerning Valeant's

13  "good credit," Counterclaim Defendants respond that Valeant's credit rating is

14  below investment grade:  BB- from Standard & Poor's ("S&P") and Ba3 from

15  Moody's.  Each of these ratings is considered "speculative" and subject to

16  substantial credit risk.  In contrast, Allergan has A+ and A3 investment-grade

17  ratings from S&P and Moody's, respectively.  And while Counterclaimants allege

18  that Valeant has "a low debt-to-earnings ratio," the earnings referenced are, on

19  information and belief, non-GAAP earnings.  This is not an accurate reflection of

20  Valeant's core business operations because Valeant incurred an operating loss in

21  2013 and had net losses in 2013 and 2012.  By U.S. GAAP standards, the ratio

22  referenced by Valeant is $17.3 billion-to-zero.  The most common leverage ratio

23  relied on by analysts and the investment community, however, is debt-to-equity.

24  Valeant has a high debt-to-equity ratio of 3.23x, as of June 30, 2014.  Ratings

25  reports by S&P and Moody's characterize Valeant's debt to equity as high and

26  point to the high leverage as a reason for Valeant's below investment grade rating.

27  In addition, on information and belief, Valeant's quick ratio, which is determined

28  as current assets less inventory divided by current liabilities and measures a

1    company's ability to cover short term debts with its relatively liquid assets, is 1.7x

2    compared to Allergan's 3.4x.

3    •    With respect to Counterclaimants allegations concerning Valeant's

4    "business strategy" to earn revenue through the sale of a diversified portfolio of

5    durable products, Counterclaim Defendants respond that, on information and

6    belief, of the Top 20 products reported by Valeant in its Q2 Earnings Presentation,

7    products that are currently under patent protection (which generate greater margins

8    than products not under patent protection) represent over 40% of the revenues of

9    Valeant's Top 20 products.  On information and belief, products with patents

10   expiring within the next 30 months represent over 20% of the revenues from

11   Valeant's Top 20 products.

12   •    With respect to Counterclaimants assertion that Valeant transacts with

13   companies making products that are not subject to high-risk R&D activity,

14   Counterclaim Defendants respond that Valeant preys on companies that engaged in

15   high-risk R&D to successfully develop the products that Valeant is now exploiting.

16   With respect to Counterclaimants assertions that Valeant engages in low-risk, high-

17   reward transactions, Counterclaim Defendants respond that, on information and

18   belief, Valeant has recognized impairment charges on IPR&D since merging with

19   Biovail Corporation in 2010 ($89.2 million, $109.2 million, $189.9 million and

20   $153.6 million in 2010, 2011, 2012 and 2013, respectively).  Indeed, Valeant's

21   reported growth rate is based on its acquisition of more than one hundred

22   companies since 2008—resulting in a crushing debt load of $17.3 billion.

23   Valeant's business model depends on constantly making new and larger

24   acquisitions of companies with successful products and strong cash flows and

25   balance sheets, using these acquired assets to offset the debt burdens of the

26   previous acquisitions, and then cutting research and development efforts in order to

27   reap the profits of the acquired companies' revenue streams without incurring

28   expenses for the research and development—before Valeant's entire enterprise

1    eventually collapses for lack of the next acquisition.  As numerous analysts and
2    market observers have commented, this business model is unsustainable.

3            Counterclaim Defendants lack knowledge or information sufficient to form a
4    belief as to the truth of the remaining allegations in this paragraph and therefore
5    deny each and every such allegation.

6            27.    Counterclaim Defendants admit that Valeant and Pershing Square
7    began discussing a hostile takeover of Allergan in February 2014.  Counterclaim
8    Defendants admit that Valeant and Pershing Square purported to enter into an
9    agreement on February 25, 2014.  Counterclaim Defendants assert that Valeant
10   began taking substantial steps toward launching a tender offer on February 6, 2014
11   or earlier.  Counterclaim Defendants admit that PS Fund 1 began purchasing
12   Allergan stock on February 25, 2014.  Counterclaim Defendants admit that on
13   April 21, 2014 Valeant and Pershing Square announced that PS Fund 1 was the
14   beneficial owner of 9.7% of Allergan's outstanding stock.  Counterclaim
15   Defendants admit that Valeant and Pershing Square simultaneously announced a
16   proposal by which Valeant would acquire Allergan for a mixture of cash and
17   Valeant stock.  Counterclaim Defendants admit that Valeant and Pershing Square
18   issued a statement that the proposal represented a substantial premium over the
19   pre-announcement share price, but deny the truth of that statement.  Counterclaim
20   Defendants lack knowledge or information sufficient to form a belief as to the truth
21   of the remaining allegations in this paragraph and therefore deny each and every
22   such allegation.

23           28.    Counterclaim Defendants deny the allegations in Paragraph 28 to the
24   extent they imply that Counterclaim Defendants participated in any fraudulent or
25   otherwise wrongful conduct.  Counterclaim Defendants admit that Allergan sent
26   Valeant a letter stating that Allergan's Board had rejected Valeant's proposal.
27   Counterclaim Defendants admit that Allergan issued a press release and investor
28   presentation setting forth the Board's reasons for rejecting a transaction.  To the

1   extent Paragraph 28 purports to describe, characterize or quote the terms of the

2   May 12, 2014 letter and Allergan's subsequent press release, the documents speak

3   for themselves, should be read as a whole, and provide only as stated therein.

4   Counterclaim Defendants respectfully refer the Court to the documents for a full

5   and complete statement of their content.  Counterclaim Defendants assert that

6   Allergan's Board conducted a detailed review of Valeant's initial proposal, revised

7   proposal, and exchange offer at its meetings in May and June of 2014.

8   Counterclaim Defendants further assert that the Allergan Board's opinion that the

9   offer was "grossly inadequate" was the determination of the unanimous Board after

10   a full examination of the offer and additional relevant facts.

11       29.    To the extent Paragraph 29 purports to describe, characterize or quote

12   the terms of the May 30, 2014 letter, the document speaks for itself, should be read

13   as a whole, and provides only as stated therein.  Counterclaim Defendants

14   respectfully refer the Court to the document for a full and complete statement of its

15   content.  Counterclaim Defendants deny the remaining allegations in this

16   paragraph.

17       30.    To the extent Paragraph 30 purports to describe, characterize or quote

18   the terms of the May 30, 2014 letter, Counterclaim Defendants state that it speaks

19   for itself, should be read as a whole, and provides only as stated therein.

20   Counterclaim Defendants respectfully refer the Court to the document for a full

21   and complete statement of its content.  Counterclaim Defendants lack knowledge

22   or information sufficient to form a belief as to the truth of the remaining

23   allegations in this paragraph and therefore deny each and every such allegation.

24       31.    To the extent Paragraph 31 purports to describe, characterize or quote

25   the terms of the May 30, 2014 letter, Counterclaim Defendants state that it speaks

26   for itself, should be read as a whole, and provides only as stated therein.

27   Counterclaim Defendants respectfully refer the Court to the document for a full

28   and complete statement of its content.  Counterclaim Defendants deny that as of

1    the date of the offer, the market price of Valeant shares and Allergan shares

2    reflected their true value, and on that basis among others deny the remaining

3    allegations in this paragraph.

4           32.    Counterclaim Defendants deny all allegations in Paragraph 32 that

5    they violated any applicable securities law.  Counterclaim Defendants admit that

6    Allergan's Board rejected the offer.  Counterclaim Defendants assert that

7    Allergan's Board conducted a detailed review of Valeant's initial proposal, revised

8    proposal, and exchange offer at its meetings in May and June of 2014.

9    Counterclaim Defendants further assert that the Allergan Board's opinion that the

10   offer was "grossly inadequate" was the determination of the unanimous Board after

11   a full examination of the offer and additional relevant facts.  Counterclaim

12   Defendants deny the remaining allegations in this paragraph.

13          33.    To the extent the allegations in Paragraph 33 call for legal

14   conclusions, Counterclaim Defendants need not respond.  If a response is required,

15   Counterclaim Defendants deny all such allegations, including that Counterclaim

16   Defendants violated any applicable securities law.  Counterclaim Defendants admit

17   that Pershing Square worked to call a stockholder meeting but deny the remaining

18   allegations in the first sentence of Paragraph 33.  To the extent Paragraph 33

19   purports to describe, characterize or quote Allergan's Certificate of Incorporation,

20   the document speaks for itself, should be read as a whole, and provides only as

21   stated therein.  Counterclaim Defendants respectfully refer the Court to the

22   document for a full and complete statement of its content.  Counterclaim

23   Defendants deny that the Allergan Board was unwilling to consider a transaction.

24   Counterclaim Defendants assert that Allergan's Board conducted a detailed review

25   of Valeant's initial proposal, revised proposal, and exchange offer at its meetings

26   in May and June of 2014.  Counterclaim Defendants further assert that the

27   Allergan Board's opinion that the offer was "grossly inadequate" was the

28   determination of the unanimous Board after a full examination of the offer and

1    additional relevant facts.  Counterclaim Defendants assert that Valeant began

2    taking substantial steps toward launching a tender offer on February 6, 2014 or

3    earlier, and on that basis deny that Pershing Square sought to call a shareholder

4    meeting to "give shareholders an opportunity to be heard."  Counterclaim

5    Defendants lack knowledge or information sufficient to form a belief as to the truth

6    of the remaining allegations in this paragraph and therefore deny each and every

7    such allegation.

8         34.    To the extent the allegations in Paragraph 34 call for legal

9    conclusions, Counterclaim Defendants need not respond.  To the extent a response

10   is required, Counterclaim Defendants admit that Pershing Square filed a

11   preliminary solicitation statement on Schedule 14A on June 2, 2014.  To the extent

12   Paragraph 34 purports to describe, characterize or quote Pershing Square's June 2,

13   2014 Schedule 14A and Allergan's bylaws, the documents speak for themselves,

14   should be read as a whole, and provide only as stated therein.  Counterclaim

15   Defendants respectfully refer the Court to the documents for a full and complete

16   statement of their content.  Counterclaim Defendants assert that Valeant began

17   taking substantial steps toward launching a tender offer on or about February 6,

18   2014, prior to the filing of the Schedule 14A.  Counterclaim Defendants admit that

19   Allergan stipulated to hold the special meeting on December 18.  Counterclaim

20   Defendants deny that Allergan entered into a stipulation in order to avoid a trial

21   over its Bylaws in Delaware.  Counterclaim Defendants lack knowledge or

22   information sufficient to form a belief as to the truth of the remaining allegations in

23   this paragraph and therefore deny each and every such allegation.

24        35.    To the extent the allegations in Paragraph 35 call for legal

25   conclusions, Counterclaim Defendants need not respond.  To the extent a response

26   is required, Counterclaim Defendants deny that the pre-announcement prices of

27   Valeant and Allergan reflect their true value.  On that basis, Counterclaim

28   Defendants deny the allegation that the offer reflects a substantial premium over

1  the pre-announcement market value of Allergan.  Counterclaim Defendants admit

2  that Glass Lewis issued the report referenced in Paragraph 35.  To the extent

3  Paragraph 35 purports to describe, characterize or quote the terms of the Glass

4  Lewis report, the report speaks for itself, should be read as a whole, and provides

5  only as stated therein.  Counterclaim Defendants respectfully refer the Court to the

6  document for a full and complete statement of its content.  Counterclaim

7  Defendants deny the remaining allegations in this paragraph.

8       36.    Counterclaim Defendants deny all allegations in Paragraph 36 that

9  they violated any applicable securities law.  Counterclaim Defendants deny that

10  they have perpetrated any misstatements and half-truths in violation of any

11  applicable securities law.  Counterclaim Defendants assert that any and all efforts

12  to call a special meeting have been instigated by Pershing Square, a hedge fund (a)

13  controlled by Ackman—an "activist investor" who attempts to make money by

14  acquiring minority stakes in companies and threatening their Boards with proxy

15  contests unless they take steps towards short-term increases in the stock price, and

16  (b) which acquired its 9.7 percent stake in Allergan by virtue of its violations of the

17  insider trading laws governing tender offers.  *See* Compl. ¶ 70.  On this basis,

18  among others, Counterclaim Defendants deny each and every allegation in

19  Paragraph 36.

20       37.    To the extent the allegations in Paragraph 37 call for legal

21  conclusions, Counterclaim Defendants need not respond.  To the extent a response

22  is required, Counterclaim Defendants admit that Valeant announced its intention to

23  launch an exchange offer on June 2, 2014 but deny any allegation in Paragraph 37

24  suggesting that Valeant began taking substantial steps toward launching a tender

25  offer at some time after February 6, 2014.  Counterclaim defendants admit that

26  Valeant filed a Schedule TO and Form S-4 with the SEC on June 18.  To the extent

27  Paragraph 37 purports to describe, characterize or quote the terms of the June 2,

28  2014 announcement and the June 18, 2014 Schedule TO and Form S-4, the

1   documents speak for themselves, should be read as a whole, and provide only as

2   stated therein.  Counterclaim Defendants respectfully refer the Court to the

3   documents for a full and complete statement of their content.  Counterclaim

4   Defendants lack knowledge or information sufficient to form a belief as to the truth

5   of the remaining allegations in this paragraph and therefore deny each and every

6   such allegation.

7       38.     To the extent the allegations in Paragraph 38 call for legal

8   conclusions, Counterclaim Defendants need not respond.  To the extent a response

9   is required, and to the extent Paragraph 38 purports to describe, characterize or

10  quote the terms of the June 18, 2014 Schedule TO, the document speaks for itself,

11  should be read as a whole, and provides only as stated therein.  Counterclaim

12  Defendants respectfully refer the Court to the document for a full and complete

13  statement of its content.  Counterclaim Defendants lack knowledge or information

14  sufficient to form a belief as to the truth of the remaining allegations in this

15  paragraph and therefore deny each and every such allegation.

16      39.     To the extent the allegations in Paragraph 39 call for legal

17  conclusions, Counterclaim Defendants need not respond.  To the extent a response

18  is required, Counterclaim Defendants admit that Valeant, AGMS and PS Fund 1

19  are identified as "co-bidders" in the Exchange Offer.  To the extent the allegations

20  in Paragraph 39 purport to assign legal meaning to the term "co-bidders,"

21  Counterclaim Defendants respond that nothing in Rule 14e-3 suggests that

22  Regulation 14D co-bidders should be considered a single offering person.

23  Counterclaim Defendants assert that Valeant and Pershing Square were two

24  separate "persons" with respect to the insider trading rules governing the Exchange

25  Offer.  To the extent Paragraph 39 purports to describe, characterize or quote the

26  terms of the June 18, 2014 Schedule TO and Form S-4, the documents speak for

27  themselves, should be read as a whole, and provide only as stated therein.

28  Counterclaim Defendants respectfully refer the Court to the documents for a full

1  and complete statement of their content.  Counterclaim Defendants lack knowledge
2  or information sufficient to form a belief as to the truth of that statement, and
3  therefore deny such allegation.

4       40.     To the extent the allegations in Paragraph 40 call for legal
5  conclusions, Counterclaim Defendants need not respond.  To the extent a response
6  is required, and to the extent Paragraph 40 purports to describe, characterize or
7  quote the Schedule TO, the document speaks for itself, should be read as a whole,
8  and provides only as stated therein.  Counterclaim Defendants respectfully refer
9  the Court to the document for a full and complete statement of its content.

10       41.     To the extent the allegations in Paragraph 41 call for legal
11  conclusions, Counterclaim Defendants need not respond.  To the extent a response
12  is required, and to the extent Paragraph 41 purports to characterize the Schedule
13  TO, Counterclaim Defendants state that the document speaks for itself and
14  respectfully refer the Court to that document.

15       42.     To the extent the allegations in Paragraph 42 call for legal
16  conclusions, Counterclaim Defendants need not respond. If a response is required,
17  Counterclaim Defendants deny all such allegations, including that Counterclaim
18  Defendants violated any applicable securities law.  To the extent Paragraph 42
19  purports to describe, characterize, or quote documents, the documents speak for
20  themselves, should be read as a whole, and provide only as stated therein.
21  Counterclaim Defendants respectfully refer the Court to the documents for a full
22  and complete statement of their content.  Counterclaim Defendants deny the
23  remaining allegations in this paragraph.

24       43.     To the extent the allegations in Paragraph 43 call for legal
25  conclusions, Counterclaim Defendants need not respond.  If a response is required,
26  Counterclaim Defendants deny all such allegations, including that Counterclaim
27  Defendants violated any applicable securities law.  Counterclaim Defendants deny
28  that the proposal included a substantial premium or that it would adequately and

1   fairly compensates Allergan stockholders in light of the true intrinsic values of

2   Valeant's and Allergan's stock.  To the extent Paragraph 43 purports to describe,

3   characterize, or quote documents, the documents speak for themselves, should be

4   read as a whole, and provide only as stated therein.  Counterclaim Defendants

5   respectfully refer the Court to the documents for a full and complete statement of

6   their content.  Counterclaim Defendants deny the remaining allegations in this

7   paragraph.

8         44.     Counterclaim Defendants admit that Allergan has urged its

9   stockholders to reject Valeant's inadequate offer and not support Defendants'

10   solicitations or tender their shares in response to the tender offer, and that Allergan

11   filed a Schedule 14D-9 on June 23, 2014.  To the extent Paragraph 44 purports to

12   describe, characterize, or quote Allergan's June 23, 2014 Schedule 14D-9, the

13   document speaks for itself, should be read as a whole, and provides only as stated

14   therein.  Counterclaim Defendants respectfully refer the Court to the document for

15   a full and complete statement of its content.  Counterclaim Defendants deny the

16   remaining allegations in Paragraph 44.

17         45.     To the extent the allegations in Paragraph 45 call for legal

18   conclusions, Counterclaim Defendants need not respond.  If a response is required,

19   Counterclaim Defendants deny all such allegations, including that Counterclaim

20   Defendants violated any applicable securities law.  Counterclaim Defendants admit

21   that Allergan has urged its stockholders to reject Valeant's inadequate offer and

22   not support Defendants' solicitations or tender their shares in response to the

23   tender offer.  To the extent Paragraph 45 purports to describe, characterize, or

24   quote Allergan's June 23, 2014 Schedule 14D-9, the document speaks for itself,

25   should be read as a whole, and provides only as stated therein.  Counterclaim

26   Defendants respectfully refer the Court to the document for a full and complete

27   statement of its content.  Counterclaim Defendants deny the remaining allegations

28   in this paragraph.

46.     To the extent the allegations in Paragraph 46 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  Counterclaim Defendants admit that Allergan filed a Schedule 14A on October 7, 2014.  To the extent Paragraph 46 purports to describe, characterize, or quote Allergan's October 7, 2014 Preliminary Proxy Statement, the document speaks for itself, should be read as a whole, and provides only as stated therein.  Counterclaim Defendants respectfully refer the Court to the Preliminary Proxy Statement for a full and complete statement of its content.  Counterclaim Defendants deny the remaining allegations in this paragraph.

47.     To the extent the allegations in Paragraph 47 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  Counterclaim Defendants deny the existence of an "Allergan[] charge against Valeant paper" and further deny that Mr. Pyott or any other Counterclaim Defendant made false and misleading statements in an attempt to depress Valeant stock price.  To the extent Paragraph 47 purports to describe, characterize, or quote the March 4, 2014 email referenced therein, the document speaks for itself, should be read as a whole, and provides only as stated therein.  Counterclaim Defendants respectfully refer the Court to the document for a full and complete statement of its content.  Counterclaim Defendants deny the remaining allegations in this paragraph.

48.     To the extent Paragraph 48 purports to describe, characterize, or quote the deposition of David Pyott, the transcript speaks for itself, should be read as a whole, and provides only as stated therein.  Counterclaim Defendants respectfully refer the Court to the transcript for a full and complete statement of its content.  Counterclaim Defendants deny the remaining allegations in this paragraph.

49.     Counterclaim Defendants deny that the Valeant offer included a substantial premium or that it would adequately and fairly compensate Allergan stockholders in light of the true intrinsic values of Valeant's and Allergan's stock. To the extent Paragraph 49 purports to describe, characterize, or quote the contents of Bank of America Merrill Lynch's February 2014 research report, the document speaks for itself, should be read as a whole, and provides only as stated therein. Counterclaim Defendants respectfully refer the Court to the report for a full and complete statement of its content.  Counterclaim Defendants deny the remaining allegations in this paragraph.

50.     Counterclaim Defendants admit that Goldman has provided consulting services to Allergan in the past.  To the extent Paragraph 50 purports to describe, characterize, or quote the deposition of David Pyott, the transcript speaks for itself, should be read as a whole, and provides only as stated therein. Counterclaim Defendants respectfully refer the Court to the transcript for a full and complete statement of its content.  Counterclaim Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore deny each and every such allegation.

51.     Counterclaim Defendants admit that Goldman previously acted as underwriter for Valeant equity.  Counterclaim defendants deny that Allergan deliberately disregarded facts and information from Goldman and further deny that Goldman's underwriting suggests that "Goldman did not consider Valeant stock a problem."  Counterclaim Defendants further assert that during the Valeant stock underwriting Goldman uncovered the same financial problems presently alleged by Allergan.  To the extent Paragraph 51 purports to describe, characterize, or quote the contents of the New York Times article and the transcript of the deposition of James Katzman, the article and transcript speak for themselves, should be read as a whole, and provide only as stated therein.  Counterclaim Defendants respectfully

1  refer the Court to the documents for a full and complete statement of their content.

2  Counterclaim Defendants deny the remaining allegations in this paragraph.

3      52.    To the extent Paragraph 52 purports to describe, characterize, or quote

4  the contents of the Goldman email, the document speaks for itself, should be read

5  as a whole, and provides only as stated therein.  Counterclaim Defendants

6  respectfully refer the Court to the email for a full and complete statement of its

7  content.  Counterclaim Defendants deny the remaining allegations in this

8  paragraph.

9      53.    To the extent the allegations in Paragraph 53 call for legal

10  conclusions, Counterclaim Defendants need not respond.  If a response is required,

11  Counterclaim Defendants deny all such allegations, including that Counterclaim

12  Defendants violated any applicable securities law.  Counterclaim Defendants deny

13  that Goldman advised Allergan to conduct diligence on Valeant.  Counterclaim

14  Defendants deny that anyone at Allergan recorded the call between Mr. Pyott and

15  Mr. Ackman.  Counterclaim Defendants deny the allegations in Paragraph 53 to

16  the extent that they imply that the call between Mr. Pyott and Mr. Ackman was

17  recorded by Allergan—or anyone else, at Allergan's request or with Allergan's

18  knowledge—unlawfully, or for the purpose of gaining any litigation advantage or

19  any other nefarious purpose.  Counterclaim Defendants deny each and every other

20  allegation in this paragraph.

21      54.    Counterclaim Defendants deny that Goldman advised Allergan to

22  conduct diligence on Valeant.  To the extent Paragraph 54 purports to describe,

23  characterize, or quote the contents of the Goldman email, the document speaks for

24  itself, should be read as a whole, and provides only as stated therein.  Counterclaim

25  Defendants respectfully refer the Court to the email for a full and complete

26  statement of its content.  Counterclaim Defendants deny the remaining allegations

27  in this paragraph.

28      55.    Counterclaim Defendants deny the allegations of Paragraph 55.

56.     Counterclaim Defendants deny the allegations of Paragraph 56, and further assert that Alvarez & Marsal Transaction Advisory Group, LLC and FTI Consulting, both independent specialists in forensic accounting, were retained by counsel to the Counterclaim Defendants to provide consulting services related to this matter.

57.     To the extent the allegations in Paragraph 57 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  Counterclaim Defendants admit that Professor Douglas J. Skinner was retained to provide an expert opinion declaration and testimony in connection with the present action.  Counterclaim Defendants deny that any documents were produced too late to permit Defendants to sufficiently review their contents prior to the filing of the Amended Counterclaims.  To the extent Paragraph 57 purports to describe, characterize, or quote the contents of the referenced email and expert disclosure, the documents speak for themselves, should be read as a whole, and provide only as stated therein. Counterclaim Defendants respectfully refer the Court to the documents for a full and complete statement of their content.  Counterclaim Defendants deny the remaining allegations in this paragraph.

58.     Counterclaim Defendants admit that they did not provide a declaration from Prof. Skinner in connection with their motion for a preliminary injunction as it was determined that no criticisms of Valeant's questionable accounting practices were required in support of their successful motion for preliminary injunctive relief.  Counterclaim Defendants deny the remaining allegations in this paragraph.

59.     To the extent Paragraph 59 purports to describe, characterize, or quote the contents of the referenced email, the document speaks for itself, should be read as a whole, and provides only as stated therein.  Counterclaim Defendants respectfully refer the Court to the email for a full and complete statement of its

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

1   content.  Counterclaim Defendants deny the remaining allegations in this

2   paragraph.

3       60.     To the extent Paragraph 60 purports to describe, characterize, or quote

4   the deposition of David Pyott, the document speaks for itself, should be read as a

5   whole, and provides only as stated therein.  Counterclaim Defendants respectfully

6   refer the Court to the transcript for a full and complete statement of its content.

7   Counterclaim Defendants deny the remaining allegations in this paragraph.

8       61.     To the extent the allegations in Paragraph 61 call for legal

9   conclusions, Counterclaim Defendants need not respond.  If a response is required,

10  Counterclaim Defendants deny all such allegations, including that Counterclaim

11  Defendants violated any applicable securities law.  Counterclaim Defendants deny

12  that Allergan has disregarded complaints from its own shareholders and deny that

13  Allergan has knowingly made any false or misleading statements about Valeant.

14  To the extent Paragraph 61 purports to describe, characterize, or quote the

15  deposition of David Pyott, the transcript speaks for itself, should be read as a

16  whole, and provides only as stated therein.  Counterclaim Defendants respectfully

17  refer the Court to the transcript for a full and complete statement of its content.

18  Counterclaim Defendants deny the remaining allegations contained in Paragraph

19  61.

20      62.     Counterclaim Defendants deny that Allergan has pressured its

21  executives to make false statements.  Counterclaim Defendants deny that former

22  CFO Edwards resigned from his position at Allergan for anything other than

23  personal family reasons, consistent with his and Allergan's public statements.  To

24  the extent the allegations in Paragraph 62 call for legal conclusions, Counterclaim

25  Defendants need not respond.  If a response is required, Counterclaim Defendants

26  deny all such allegations, including that Counterclaim Defendants violated any

27  applicable securities law.  Counterclaim Defendants deny the remaining allegations

28  in this paragraph.

63.     Counterclaim Defendants deny that former CFO Edwards resigned
from his position at Allergan for anything other than personal family reasons,
consistent with his and Allergan's public statements.  To the extent Paragraph 63
purports to describe, characterize, or quote documents, the documents speak for
themselves, should be read as a whole, and provide only as stated therein.
Counterclaim Defendants respectfully refer the Court to the documents for a full
and complete statement of their content.  Counterclaim Defendants deny the
remaining allegations in this paragraph.

64.     Counterclaim Defendants deny that former CFO Edwards resigned
from his post at Allergan for anything other than personal family reasons,
consistent with his and Allergan's public statements.  To the extent Paragraph 64
purports to describe, characterize, or quote the deposition of David Pyott, the
document speaks for itself, should be read as a whole, and provides only as stated
therein.  Counterclaim Defendants respectfully refer the Court to the transcript for
a full and complete statement of its content.  Counterclaim Defendants deny the
remaining allegations in this paragraph.

65.     Counterclaim Defendants deny that the slide in question was not
supported or included "high risk" statements.  To the extent Paragraph 65 purports
to describe, characterize, or quote the deposition of David Pyott or the referenced
email, the transcript and email speak for themselves, should be read as a whole,
and provide only as stated therein.  Counterclaim Defendants respectfully refer the
Court to the documents for a full and complete statement of their content.
Counterclaim Defendants deny the remaining allegations in this paragraph.

66.     To the extent Paragraph 66 purports to describe, characterize, or quote
the referenced email, the document speaks for itself, should be read as a whole, and
provides only as stated therein.  Counterclaim Defendants respectfully refer the
Court to the email for a full and complete statement of its content.  Counterclaim
Defendants specifically deny that this email indicates that Mr. Lawrence was

1    "banished… from the process."  Counterclaim Defendants deny the remaining

2    allegations in this paragraph.

3          67.    To the extent the allegations in Paragraph 67 call for legal

4    conclusions, Counterclaim Defendants need not respond.  If a response is required,

5    Counterclaim Defendants deny all such allegations, including that Counterclaim

6    Defendants violated any applicable securities law.  Counterclaim Defendants deny

7    that Allergan has failed to perform any investigation or analysis concerning its

8    statements about Valeant's business model.  Counterclaim Defendants further

9    assert that these statements have been supported by evidence and Allergan's

10   consultants and are consistent with widely held beliefs regarding Valeant's

11   business model.  Counterclaim Defendants admit that Allergan filed a Schedule

12   14A on July 8, 2014 and issued a press release on June 16, 2014.  To the extent

13   Paragraph 67 purports to describe, characterize, or quote Allergan's July 8, 2014

14   Schedule 14A filing and June 16, 2014 press release, the documents speak for

15   themselves, should be read as a whole, and provide only as stated therein.

16   Counterclaim Defendants respectfully refer the Court to the documents for a full

17   and complete statement of their content.  Counterclaim Defendants deny the

18   remaining allegations in this paragraph.

19         68.    To the extent the allegations in Paragraph 68 call for legal

20   conclusions, Counterclaim Defendants need not respond.  If a response is required,

21   Counterclaim Defendants deny all such allegations, including that Counterclaim

22   Defendants violated any applicable securities law.  Counterclaim Defendants admit

23   Allergan made an investor presentation on June 10, 2014.  Counterclaim

24   Defendants admit Allergan made an investor presentation on May 27, 2014.  To

25   the extent Paragraph 68 purports to describe, characterize or quote the June 10,

26   2014 investor presentation or the May 27, 2014 investor presentation, the

27   documents speak for themselves, should be read as a whole, and provide only as

28   stated therein.  Counterclaim Defendants respectfully refer the Court to the

1   documents for a full and complete statement of their content.  Counterclaim

2   Defendants deny that Allergan has failed to perform any investigation or analysis

3   concerning its statements about Bausch & Lomb ("B&L").  Counterclaim

4   Defendants further assert that B&L's revenues declined over 3.8% from Q4 2013

5   to Q1 2014.  Counterclaim Defendants lack knowledge or information sufficient to

6   form a belief as to the truth of the remaining allegations in this paragraph and

7   therefore deny each and every such allegation.

8        69.    To the extent the allegations in Paragraph 69 call for legal

9   conclusions, Counterclaim Defendants need not respond.  If a response is required,

10   Counterclaim Defendants deny all such allegations, including that Counterclaim

11   Defendants violated any applicable securities law.  Counterclaim Defendants admit

12   that Allergan filed a Schedule 14A on July 8, 2014.  To the extent Paragraph 69

13   purports to describe, characterize or quote the July 8, 2014 Schedule 14A, the

14   document speaks for itself, should be read as a whole, and provides only as stated

15   therein.  Counterclaim Defendants respectfully refer the Court to the document for

16   a full and complete statement of its content.  Counterclaim Defendants assert that

17   Valeant's Q2 2014 Form 10-Q MD&A represents that an increase in sales revenue

18   from Valeant's existing business (excluding generic competition, injectable sales,

19   and divestitures) was primarily driven by price increases.  Counterclaim

20   Defendants assert that in its Q2 2014 Form 10-Q, Valeant noted that the cost of

21   goods sold was adversely affected by the product mix, including the product

22   portfolio from B&L, indicating that the B&L portfolio is not generating as high a

23   margin as Valeant's products that have patent protection.  Counterclaim

24   Defendants assert, based on Valeant's public filings, that B&L revenues declined

25   by more than 3.8% from Q4 2013 to Q1 2014.  To the extent Paragraph 69

26   purports to describe, characterize or quote Valeant's earnings call for Q1 2014, the

27   statements made therein speak for themselves, should be read as a whole, and

28   provide only as stated therein.  Counterclaim Defendants respectfully refer the

1    Court to the earnings call for a full and complete statement of its content.

2    Counterclaim Defendants deny the remaining allegations in this paragraph.

3    　　　70.    Counterclaim Defendants deny all allegations in Paragraph 70 that

4    they violated any applicable securities law.  Counterclaim Defendants deny each

5    and every allegation in this paragraph.

6    　　　71.    Counterclaim Defendants admit that Allergan and Valeant are both

7    participants in the pharmaceutical industry, and, by virtue of that fact, compete in

8    the marketplace.  To the extent Paragraph 71 purports to describe, characterize, or

9    quote deposition transcripts and emails, the documents speak for themselves,

10   should be read as a whole, and provide only as stated therein.  Counterclaim

11   Defendants respectfully refer the Court to these documents for a full and complete

12   statement of their content.  Counterclaim Defendants deny the remaining

13   allegations in this paragraph.

14   　　　72.    Counterclaim Defendants admit that Allergan compared Valeant to

15   Tyco International, a company with a similar business model to Valeant.

16   Counterclaim Defendants further assert that Valeant, like Tyco, relies heavily upon

17   acquisitions to drive growth.  Counterclaim Defendants deny involvement in any

18   personnel decisions or "drastic actions" at Ophthalmology Management.  To the

19   extent Paragraph 72 purports to describe, characterize, or quote the deposition of

20   David Pyott and the referenced email, the documents speak for themselves, should

21   be read as a whole, and provide only as stated therein.  Counterclaim Defendants

22   respectfully refer the Court to the documents for a full and complete statement of

23   their content.  Counterclaim Defendants lack knowledge or information sufficient

24   to form a belief as to the truth of the any allegation in this paragraph relating to the

25   actions taken by Ophthalmology Management and therefore deny each and every

26   such allegation.  Counterclaim Defendants deny the remaining allegations in this

27   paragraph.

28

73.     To the extent the allegations in Paragraph 73 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  Counterclaim Defendants admit that Allergan expected drops in the value of Valeant stock—drops which have in fact occurred since the announcement of its plan to acquire Allergan—and has communicated that expectation to shareholders.  Counterclaim Defendants deny the remaining allegations in this paragraph.

74.     To the extent the allegations in Paragraph 74 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  Counterclaim Defendants admit that Allergan disclosed a risk of an event of default in its October 7, 2014 Schedule 14A.  To the extent Paragraph 74 purports to describe, characterize, or quote Allergan's October 7, 2014 Schedule 14A, the document speaks for itself, should be read as a whole, and provides only as stated therein.  Counterclaim Defendants respectfully refer the Court to the filing for a full and complete statement of its content.  Counterclaim Defendants further assert that Allergan has subsequently issued amended disclosures with respect to the risk of an event of default under the Amended and Restated Credit Agreement.  Counterclaim Defendants deny the remaining allegations in this paragraph.

75.     To the extent the allegations in Paragraph 75 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  Counterclaim Defendants admit that Allergan did not have any amounts outstanding under the Credit Agreement as of the date of the proxy statement.  Counterclaim Defendants specifically deny that "obtaining waivers from its lenders or even just approving Pershing Square and

1   Valeant's slate of directors" are "completely within its control" or would otherwise

2   constitute actions that "can easily avoid an event of default."  To the extent

3   Paragraph 75 purports to describe, characterize, or quote Allergan's October 7,

4   2014 Schedule 14A, the document speaks for itself, should be read as a whole, and

5   provides only as stated therein.  Counterclaim Defendants respectfully refer the

6   Court to the filing for a full and complete statement of its content.  Counterclaim

7   Defendants deny the remaining allegations in this paragraph.

8       76.    To the extent the allegations in Paragraph 76 call for legal

9   conclusions, Counterclaim Defendants need not respond.  If a response is required,

10  Counterclaim Defendants deny all such allegations, including that Counterclaim

11  Defendants violated any applicable securities law.  Counterclaim Defendants assert

12  that inadequacy opinions are standard opinions routinely obtained in hostile offers.

13  There is no requirement that the Board obtain any opinion in order to evaluate the

14  offer, so it is specious, at best, to criticize the type of opinion the Board received.

15  Counterclaim Defendants deny that Allergan and its Board obtained and relied

16  upon inadequacy opinions in an effort to mislead Allergan's shareholders or for

17  any other nefarious purpose.  Counterclaim Defendants deny each and every

18  remaining allegation in this paragraph.

19      77.    Counterclaim Defendants admit that Allergan filed a Schedule 14D-9

20  citing no fairness opinion, but deny any implication that a fairness opinion was

21  necessary or appropriate under these circumstance, or that the absence of such a

22  fairness opinion suggests any deficiency in the Allergan Board's thorough and

23  comprehensive analysis of Valeant's offer.  Counterclaim Defendants admit that

24  the Schedule 14D-9 cited inadequacy opinions from Goldman and Merrill Lynch,

25  which are routinely obtained and relied upon in hostile offer situations.  To the

26  extent Paragraph 77 purports to describe, characterize or quote the Schedule 14D-

27  9, the document speaks for itself, should be read as a whole, and provides only as

28  stated therein.  Counterclaim Defendants respectfully refer the Court to the

1   document for a full and complete statement of its content.  Counterclaim

2   Defendants admit that Allergan is advised by, among others, Goldman and Merrill

3   Lynch.  Counterclaim Defendants admit that Goldman and Merrill Lynch provided

4   financial opinions to Allergan on June 21, 2014.  To the extent Paragraph 77

5   purports to describe, characterize or quote Goldman's and Merrill Lynch's

6   financial opinions, the documents speak for themselves, should be read as a whole,

7   and provide only as stated therein.  Counterclaim Defendants respectfully refer the

8   Court to the documents for a full and complete statement of their content.

9   Counterclaim Defendants assert that Allergan's Board conducted a detailed review

10   of Valeant's initial proposal, revised proposal, and exchange offer at its meetings

11   in May and June of 2014.  Counterclaim Defendants further assert that the

12   Allergan Board's opinion that the offer was "grossly inadequate" was the

13   determination of the unanimous Board after a full examination of the offer and

14   additional relevant facts.  Counterclaim Defendants deny the remaining allegations

15   in this paragraph.

16         78.      To the extent the allegations in Paragraph 78 call for legal

17   conclusions, Counterclaim Defendants need not respond.  If a response is required,

18   Counterclaim Defendants deny all such allegations, including that Counterclaim

19   Defendants violated any applicable securities law.  To the extent Paragraph 78

20   purports to describe, characterize or quote the written opinions of Goldman and

21   Merrill Lynch, the documents speak for themselves, should be read as a whole, and

22   provide only as stated therein.  Counterclaim Defendants respectfully refer the

23   Court to the documents for a full and complete statement of their content.

24   Counterclaim Defendants admit that Allergan has stated that the price offered by

25   Valeant represented "grossly inadequate" value for Allergan stockholders.

26   Counterclaim Defendants assert that Allergan's Board conducted a detailed review

27   of Valeant's initial proposal, revised proposal, and exchange offer at its meetings

28   in May and June of 2014.  Counterclaim Defendants further assert that the

1   Allergan Board's opinion that the offer was "grossly inadequate" was the

2   determination of the unanimous Board after a full examination of the offer and

3   additional relevant facts.  Counterclaim Defendants deny the remaining allegations

4   in this paragraph.

5       79.    To the extent the allegations in Paragraph 79 call for legal

6   conclusions, Counterclaim Defendants need not respond.  If a response is required,

7   Counterclaim Defendants deny all such allegations, including that Counterclaim

8   Defendants violated any applicable securities law.  To the extent Paragraph 79

9   purports to describe, characterize or quote the research report of Bank of America

10  Merrill Lynch, the document speaks for itself, should be read as a whole, and

11  provides only as stated therein.  Counterclaim Defendants respectfully refer the

12  Court to the document for a full and complete statement of its content.

13  Counterclaim Defendants assert that when the Board considered Valeant's

14  exchange offer and rejected it as "grossly inadequate," it considered the opinions

15  of its financial advisors, the value of the common shares of Valeant, the urgency

16  with which Valeant is pursuing the exchange offer, the actions taken by Valeant

17  and Pershing Square in the process of making their series of unsolicited proposals

18  to acquire Allergan, the quantity and nature of the exchange offer's conditions, and

19  the value, growth and business prospects of Allergan.  Counterclaim Defendants

20  deny the remaining allegations in this paragraph.

21      80.    To the extent the allegations in Paragraph 80 call for legal

22  conclusions, Counterclaim Defendants need not respond.  If a response is required,

23  Counterclaim Defendants deny all such allegations, including that Counterclaim

24  Defendants violated any applicable securities law.  To the extent Paragraph 80

25  purports to describe, characterize or quote the Schedule 14D-9 and SEC Release

26  No. 34-16833 (May 23, 1980), the documents speak for themselves, should be read

27  as a whole, and provide only as stated therein.  Counterclaim Defendants

28  respectfully refer the Court to the documents for a full and complete statement of

their content.  Counterclaim Defendants admit that Allergan has stated that the price offered by Valeant represented "grossly inadequate" value for Allergan stockholders.  Counterclaim Defendants assert that Allergan's Board conducted a detailed review of Valeant's initial proposal, revised proposal, and exchange offer at its meetings in May and June of 2014.  Counterclaim Defendants further assert that the Allergan Board's opinion that the offer was "grossly inadequate" was the determination of the unanimous Board after a full examination of the offer and additional relevant facts.  Counterclaim Defendants deny the remaining allegations in this paragraph.

81.    To the extent the allegations in Paragraph 81 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  To the extent Paragraph 81 purports to describe, characterize or quote the Schedule 14D-9 and Note (b) to Rule 14a-9, the documents speak for themselves, should be read as a whole, and provide only as stated therein.  Counterclaim Defendants respectfully refer the Court to the documents for a full and complete statement of their content.  Counterclaim Defendants deny the remaining allegations in this paragraph.

82.    To the extent the allegations in Paragraph 82 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  To the extent Paragraph 82 purports to describe, characterize or quote the July 18 filing, the document speaks for itself, should be read as a whole, and provides only as stated therein.  Counterclaim Defendants respectfully refer the Court to the document for a full and complete statement of its content.  Counterclaim Defendants deny that Allergan has misled its shareholders or the market about Valeant's business model or otherwise, and deny that Valeant has provided sufficient public disclosures of

SF\5875961.13

36                      ANSWER TO AMENDED COUNTERCLAIMS

1  data or other information needed to fully analyze its core business operations.

2  Allergan is among one of the many voices, including well recognized names from

3  the investment community (both prior to and during Valeant's bid for Allergan)

4  calling into question whether Valeant's business is strong or sustainable, and

5  whether its financial disclosures are complete and accurate.  Counterclaim

6  Defendants deny the remaining allegations in this paragraph.

7          83.    To the extent the allegations in Paragraph 83 call for legal

8  conclusions, Counterclaim Defendants need not respond.  If a response is required,

9  Counterclaim Defendants deny all such allegations, including that Counterclaim

10 Defendants violated any applicable securities law.  Counterclaim Defendants deny

11 that Allergan has released "questionable earnings guidance."  Counterclaim

12 Defendants admit that Allergan issued guidance on May 12, 2014 and on July 14,

13 2014.  To the extent Paragraph 83 purports to describe, characterize or quote

14 Allergan's May 12, 2014 and July 14, 2014 guidance, the documents speak for

15 themselves, should be read as a whole, and provide only as stated therein.

16 Counterclaim Defendants respectfully refer the Court to the documents for a full

17 and complete statement of their content.  Counterclaim Defendants deny the

18 remaining allegations in this paragraph.

19         84.    To the extent the allegations in Paragraph 84 call for legal

20 conclusions, Counterclaim Defendants need not respond.  If a response is required,

21 Counterclaim Defendants deny all such allegations, including that Counterclaim

22 Defendants violated any applicable securities law.  Counterclaim Defendants admit

23 that representatives of Allergan, including David Pyott, commenced an investor

24 roadshow in Canada.  Counterclaim Defendants assert that each and every account

25 Allergan visited in Canada during Allergan's Canadian investor tour were Allergan

26 shareholders.  Counterclaim Defendants further assert that Canada is Allergan's

27 number one market in terms of dollar sales outside of the United States, and it has

28

1    visited Canada to meet with its investors there on numerous previous occasions.

2    Counterclaim Defendants deny the remaining allegations in this paragraph.

3        85.    Counterclaim Defendants deny all allegations in Paragraph 85 that

4    they violated any applicable securities law.  Counterclaim Defendants admit that

5    Allergan raised concerns about Valeant and its proposal during its trip to Canada to

6    visit Allergan shareholders.  Counterclaim Defendants deny the remaining

7    allegations in this paragraph.

8        86.    To the extent the allegations in Paragraph 86 call for legal

9    conclusions, Counterclaim Defendants need not respond.  If a response is required,

10   Counterclaim Defendants deny all such allegations, including that Counterclaim

11   Defendants violated any applicable securities law.  Counterclaim Defendants admit

12   that Valeant filed a Preliminary Proxy Statement on Schedule 14A on June 24,

13   2014.  To the extent Paragraph 86 purports to describe, characterize or quote the

14   Schedule 14A, the document speaks for itself, should be read as a whole, and

15   provides only as stated therein.  Counterclaim Defendants respectfully refer the

16   Court to the documents for a full and complete statement of their content.

17   Counterclaim Defendants assert that representatives of Allergan met with Allergan

18   shareholders during the Canada trip.  Counterclaim Defendants deny the remaining

19   allegations in this paragraph.

20       87.    To the extent the allegations in Paragraph 87 call for legal

21   conclusions, Counterclaim Defendants need not respond.  If a response is required,

22   Counterclaim Defendants deny all such allegations, including that Counterclaim

23   Defendants violated any applicable securities law.  To the extent Paragraph 87

24   purports to describe, characterize or quote Rule 14a-3 and Rule 14a-12 under the

25   Exchange Act, the rules speak for themselves, should be read as a whole, and

26   provide only as stated therein.  Counterclaim Defendants respectfully refer the

27   Court to the referenced Exchange Act rules for a full and complete statement of

28   their content.  Counterclaim Defendants assert that Allergan met with its own

1    shareholders during the Canada trip.  Counterclaim Defendants deny the remaining

2    allegations in this paragraph.

3    88.    To the extent the allegations in Paragraph 88 call for legal

4    conclusions, Counterclaim Defendants need not respond.  If a response is required,

5    Counterclaim Defendants deny all such allegations, including that Counterclaim

6    Defendants violated any applicable securities law.  Counterclaim Defendants assert

7    that Allergan met with its own stockholders during the Canada trip.  Counterclaim

8    Defendants deny the remaining allegations in this paragraph.

9    89.    To the extent the allegations in Paragraph 89 call for legal

10   conclusions, Counterclaim Defendants need not respond.  If a response is required,

11   Counterclaim Defendants deny all such allegations, including that Counterclaim

12   Defendants violated any applicable securities law.  Counterclaim Defendants assert

13   that Allergan met with its own stockholders during the Canada trip.  Counterclaim

14   Defendants lack knowledge or information sufficient to form a belief as to the truth

15   of the remaining allegations in this paragraph and therefore deny each and every

16   such allegation.

17   90.    To the extent Paragraph 90 purports to describe, characterize or quote

18   Allergan's June 23, 2014 Schedule 14D-9, the document speaks for itself, should

19   be read as a whole, and provides only as stated therein.  Counterclaim Defendants

20   respectfully refer the Court to the filing for a full and complete statement of its

21   content.  Counterclaim Defendants admit the remaining allegations contained in

22   Paragraph 90.

23   91.    To the extent the allegations in Paragraph 91 call for legal

24   conclusions, Counterclaim Defendants need not respond.  If a response is required,

25   Counterclaim Defendants deny all such allegations, including that Counterclaim

26   Defendants violated any applicable securities law.  Counterclaim Defendants admit

27   that Defendants brought suit against Allergan and certain of its directors and

28   officers alleging, among other things, that Allergan's Special Meeting Bylaws

1   were invalid under Delaware law, and that Allergan's directors violated their

2   fiduciary duties by taking actions designed primarily to delay the Special Meeting

3   and that, after engaging in expedited discovery, the parties entered into a

4   settlement of the action including an agreement to hold the Special Meeting on

5   December 18, 2014.  To the extent Paragraph 91 purports to describe, characterize

6   or quote pleadings and other documents, the documents speak for themselves,

7   should be read as a whole, and provide only as stated therein.  Counterclaim

8   Defendants respectfully refer the Court to the documents for a full and complete

9   statement of their content.  Counterclaim Defendants deny the remaining

10  allegations in this paragraph.

11      92.     Counterclaim Defendants admit that Allergan and its board of

12  directors intend to hold the December 18 Special Meeting without restriction, as

13  set out in its Schedule 14A filing, and that they are committed to providing

14  shareholders with a forum to express their opinion on the value proposition offered

15  by Valeant.  To the extent Paragraph 92 purports to describe, characterize or quote

16  pleadings, Allergan's Schedule 14A filing and other documents, the documents

17  speak for themselves, should be read as a whole, and provide only as stated therein.

18  Counterclaim Defendants deny the remaining allegations in this paragraph.

19      93.     Counterclaim Defendants lack knowledge or information sufficient to

20  form a belief as to the truth of any allegation regarding Defendants' reliance on

21  Allergan's assurances and therefore deny each and every such allegation.

22  Counterclaim Defendants admit that Allergan and its board of directors intend to

23  hold the December 18, 2014 Special Meeting, at which eligible stockholders will

24  be able to vote on the matters set forth in its Schedule 14A filing.  Counterclaim

25  Defendants deny the remaining allegations in this paragraph.

26      94.     Counterclaim Defendants lack knowledge or information sufficient to

27  form a belief as to the truth of the allegations in the first sentence of this paragraph

28  and therefore deny each and every such allegation.  Counterclaim Defendants

1   admit that certain press outlets reported on rumors regarding potential transactions

2   involving Allergan.  To the extent Paragraph 94 purports to describe, characterize

3   or quote press reports and pleadings, the articles speak for themselves, should be

4   read as a whole, and provide only as stated therein.  Counterclaim Defendants

5   respectfully refer the Court to the documents for a full and complete statement of

6   their content.  Counterclaim Defendants deny the remaining allegations in this

7   paragraph.

8        95.     Counterclaim Defendants lack knowledge or information sufficient to

9   form a belief as to the truth of the allegations in the first sentence in this paragraph

10  and therefore deny each and every such allegation.  To the extent Paragraph 95

11  purports to describe, characterize or quote press reports, the reports speak for

12  themselves, should be read as a whole, and provide only as stated therein.

13  Counterclaim Defendants respectfully refer the Court to the documents for a full

14  and complete statement of their content.  Counterclaim Defendants deny the

15  remaining allegations in this paragraph.

16       96.     To the extent the allegations in Paragraph 96 call for legal

17  conclusions, Counterclaim Defendants need not respond.  If a response is required,

18  Counterclaim Defendants deny all such allegations, including that Counterclaim

19  Defendants violated any applicable securities law.  Counterclaim Defendants assert

20  that, with respect to Allergan's public disclosures, it has acted in accordance with

21  all applicable laws.  Counterclaim Defendants deny the remaining allegations in

22  this paragraph.

23       97.     To the extent the allegations in Paragraph 97 call for legal

24  conclusions, Counterclaim Defendants need not respond.  Counterclaim

25  Defendants assert that, with respect to Allergan's public disclosures, Allergan has

26  acted in accordance with all applicable laws.  If a response is required,

27  Counterclaim Defendants deny the allegations contained in Paragraph 97, except

28  admit that Allergan has not issued an amended Schedule 14D-9 to disclose any

1    extraordinary transaction.  Counterclaim Defendants deny the remaining

2    allegations in this paragraph.

3         98.    To the extent the allegations in Paragraph 98 call for legal

4    conclusions, Counterclaim Defendants need not respond.  If a response is required,

5    Counterclaim Defendants deny all such allegations, including that Counterclaim

6    Defendants violated any applicable securities law.  Counterclaim Defendants deny

7    the remaining allegations in this paragraph.

8         99.    To the extent the allegations in Paragraph 99 call for legal

9    conclusions, Counterclaim Defendants need not respond.  If a response is required,

10   Counterclaim Defendants deny all such allegations, including that Counterclaim

11   Defendants violated any applicable securities law.  Counterclaim Defendants deny

12   the remaining allegations in this paragraph.

13        100.   Counterclaim Defendants repeat and incorporate by reference their

14   responses to Paragraphs 25 through 99 as if set forth fully herein.

15        101.   To the extent the allegations in Paragraph 101 call for legal

16   conclusions, Counterclaim Defendants need not respond.  To the extent a response

17   is required, Counterclaim Defendants admit that Counterclaimants purport to bring

18   a claim pursuant to Section 14(a) of the Securities Act and Rule 14a-9,

19   promulgated thereunder, against Counterclaim Defendants.  Counterclaim

20   Defendants deny, however, that Counterclaimants have stated a claim upon which

21   relief could be granted and deny the remaining allegations in this paragraph.

22        102.   To the extent the allegations in Paragraph 102 call for legal

23   conclusions, Counterclaim Defendants need not respond.  If a response is required,

24   Counterclaim Defendants deny all such allegations, including that Counterclaim

25   Defendants violated any applicable securities law.  Counterclaim Defendants admit

26   that Allergan filed a Schedule 14A on July 8, 2014.  Counterclaim Defendants

27   admit that Allergan filed a Schedule 14A on June 16, 2014.  Counterclaim

28   Defendants admit that Allergan gave an investor presentation on June 10, 2014.

1   Counterclaim Defendants admit that Allergan filed a Schedule 14D-9 on June 23,

2   2014.  Counterclaim Defendants admit that Allergan filed a Schedule 14A on

3   September 16, 2014.  Counterclaim Defendants admit that Allergan filed a

4   Schedule 14A and preliminary proxy on October 7, 2014.  To the extent Paragraph

5   102 purports to describe, characterize or quote Allergan's various SEC filings, the

6   filings speak for themselves, should be read as a whole, and provide only as stated

7   therein.  Counterclaim Defendants respectfully refer the Court to the filings for a

8   full and complete statement of their content.  Counterclaim Defendants deny the

9   remaining allegations in this paragraph.

10          103.   Counterclaim Defendants repeat and incorporate by reference their

11   responses to Paragraphs 103 as if set forth fully herein.  To the extent the

12   allegations in Paragraph 103 call for legal conclusions, Counterclaim Defendants

13   need not respond.  If a response is required, Counterclaim Defendants deny all

14   such allegations, including that Counterclaim Defendants violated any applicable

15   securities law.  Counterclaim Defendants deny any allegations in Paragraph 103

16   that refer or relate to Counterclaim Defendants.  Counterclaim Defendants lack

17   knowledge or information sufficient to form a belief as to the truth of the

18   remaining allegations in this paragraph and therefore deny each and every such

19   allegation.

20          104.   Counterclaim Defendants deny the allegations in Paragraph 104,

21   except admit that Allergan has made extensive disclosures of details related to the

22   proposed transaction.

23          105.   To the extent the allegations in Paragraph 105 call for legal

24   conclusions, Counterclaim Defendants need not respond.  If a response is required,

25   Counterclaim Defendants deny all such allegations, including that Counterclaim

26   Defendants violated any applicable securities law.  Counterclaim Defendants deny

27   any allegations in Paragraph 105 that refer or relate to Counterclaim Defendants

28   and otherwise lack knowledge or information sufficient to form a belief as to the

1    truth of the allegations in this paragraph and therefore deny each and every such

2    allegation.

3          106.   To the extent the allegations in Paragraph 106 call for legal

4    conclusions, Counterclaim Defendants need not respond.  If a response is required,

5    Counterclaim Defendants deny all such allegations, including that Counterclaim

6    Defendants violated any applicable securities law.  Counterclaim Defendants deny

7    any allegations in Paragraph 106 that refer or relate to Counterclaim Defendants

8    and otherwise lack knowledge or information sufficient to form a belief as to the

9    truth of the allegations in this paragraph and therefore deny each and every such

10   allegation.

11         107.   Counterclaim Defendants repeat and incorporate by reference their

12   responses to Paragraphs 25 through 106 as if set forth fully herein.

13         108.   To the extent the allegations in Paragraph 108 call for legal

14   conclusions, Counterclaim Defendants need not respond.  To the extent a response

15   is required, Counterclaim Defendants admit that Counterclaimants purport to bring

16   a claim pursuant to Section 14(e) of the Exchange Act of 1934 against

17   Counterclaim Defendants.  Counterclaim Defendants deny, however, that

18   Counterclaimants have stated a claim upon which relief could be granted and deny

19   the remaining allegations in this paragraph.

20         109.   To the extent the allegations in Paragraph 109 call for legal

21   conclusions, Counterclaim Defendants need not respond.  If a response is required,

22   Counterclaim Defendants deny all such allegations, including that Counterclaim

23   Defendants violated any applicable securities law.  Counterclaim Defendants admit

24   that Allergan filed a Schedule 14A on July 8, 2014.  Counterclaim Defendants

25   admit that Allergan filed a Schedule 14A on June 16, 2014.  Counterclaim

26   Defendants admit that Allergan gave an investor presentation on June 10, 2014.

27   Counterclaim Defendants admit that Allergan filed a Schedule 14D-9 on July 23,

28   2014.  Counterclaim Defendants admit that Allergan filed a Schedule 14A on

1 September 16, 2014.  Counterclaim Defendants admit that Allergan filed a
2 Schedule 14A on October 7, 2014.  To the extent Paragraph 109 purports to
3 describe, characterize or quote Allergan's various SEC filings, the filings speak for
4 themselves, should be read as a whole, and provide only as stated therein.
5 Counterclaim Defendants respectfully refer the Court to the documents for a full
6 and complete statement of their content.  Counterclaim Defendants deny the
7 remaining allegations in this paragraph.

8     110.  To the extent the allegations in Paragraph 110 call for legal
9 conclusions, Counterclaim Defendants need not respond.  If a response is required,
10 Counterclaim Defendants deny all such allegations, including that Counterclaim
11 Defendants violated any applicable securities law.  Counterclaim Defendants
12 repeat and incorporate by reference their responses to Paragraph 110 as if set forth
13 fully herein.  Counterclaim Defendants lack knowledge or information sufficient to
14 form a belief as to the effect its statements will have upon the decision of
15 Allergan's stockholders regarding whether to tender their stock in the exchange
16 offer and therefore deny each and every such allegation.  Counterclaim Defendants
17 deny the remaining allegations in this paragraph.

18     111.  Counterclaim Defendants deny the allegations in Paragraph 111,
19 except admit that Allergan has made extensive disclosures of details related to the
20 proposed transaction.

21     112.  To the extent the allegations in Paragraph 112 call for legal
22 conclusions, Counterclaim Defendants need not respond.  If a response is required,
23 Counterclaim Defendants deny all such allegations, including that Counterclaim
24 Defendants violated any applicable securities law.  Counterclaim Defendants deny
25 any allegations in Paragraph 112 that refer or relate to Counterclaim Defendants
26 and otherwise lack knowledge or information sufficient to form a belief as to the
27 truth of the allegations in this paragraph and therefore deny each and every such
28 allegation.

113.   To the extent the allegations in Paragraph 113 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  Counterclaim Defendants deny any allegations in Paragraph 113 that refer or relate to Counterclaim Defendants and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny each and every such allegation.

114.   Counterclaim Defendants repeat and incorporate by reference their responses to Paragraphs 25 through 113 as if set forth fully herein.

115.   To the extent the allegations in Paragraph 115 call for legal conclusions, Counterclaim Defendants need not respond.  To the extent a response is required, Counterclaim Defendants admit that Counterclaimants purport to bring a claim pursuant to Section 20(a) of the Securities Exchange Act of 1934 against Counterclaim Defendants.  Counterclaim Defendants deny, however, that Counterclaimants have stated a claim upon which relief could be granted and deny the remaining allegations in this paragraph.

116.   To the extent the allegations in Paragraph 116 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim Defendants violated any applicable securities law.  Counterclaim Defendants admit that the Individual Counterclaim Defendants were directors of Allergan at various times and participated directly and indirectly in the conduct of Allergan's business affairs in their roles as directors.  Counterclaim Defendants deny the remaining allegations in this paragraph.

117.   To the extent the allegations in Paragraph 117 call for legal conclusions, Counterclaim Defendants need not respond.  If a response is required, Counterclaim Defendants deny all such allegations, including that Counterclaim

1  Defendants violated any applicable securities law.  Counterclaim Defendants admit

2  that the Individual Counterclaim Defendants were directors of Allergan at various

3  times and participated directly and indirectly in the conduct of Allergan's business

4  affairs in their roles as directors.  Counterclaim Defendants deny the remaining

5  allegations in this paragraph.

6       118.   Counterclaim Defendants deny the allegations in Paragraph 118.

7       119.   To the extent the allegations in Paragraph 119 call for legal

8  conclusions, Counterclaim Defendants need not respond.  If a response is required,

9  Counterclaim Defendants deny all such allegations, including that Counterclaim

10 Defendants violated any applicable securities law.  Counterclaim Defendants deny

11 the remaining allegations in this paragraph.

12      120.   Counterclaim Defendants repeat and incorporate by reference their

13 responses to Paragraphs 25 through 119 as if set forth fully herein.

14      121.   Counterclaim Defendants lack knowledge or information sufficient to

15 form a belief as to the truth of the allegations in this paragraph and therefore deny

16 each and every such allegation.

17      122.   Counterclaim Defendants deny the allegations in Paragraph 122.

18      123.   To the extent the allegations in Paragraph 123 call for legal

19 conclusions, Counterclaim Defendants need not respond.  If a response is required,

20 Counterclaim Defendants deny all such allegations, including that Counterclaim

21 Defendants violated any applicable securities law.  Counterclaim Defendants admit

22 they did not file a proxy statement with the SEC regarding the solicitation of

23 Valeant Shareholders because Counterclaim Defendants did not solicit Valeant

24 Shareholders.  Counterclaim Defendants deny the remaining allegations in this

25 paragraph.

26      124.   To the extent the allegations in Paragraph 124 call for legal

27 conclusions, Counterclaim Defendants need not respond.  If a response is required,

28 Counterclaim Defendants deny all such allegations, including that Counterclaim

1  Defendants violated any applicable securities law.  Counterclaim Defendants deny
2  the remaining allegations in this paragraph.

3      125.   To the extent the allegations in Paragraph 125 call for legal
4  conclusions, Counterclaim Defendants need not respond.  If a response is required,
5  Counterclaim Defendants deny all such allegations, including that Counterclaim
6  Defendants violated any applicable securities law.  Counterclaim Defendants deny
7  any allegations in Paragraph 125 that refer or relate to Counterclaim Defendants
8  and otherwise lack knowledge or information sufficient to form a belief as to the
9  truth of the allegations in this paragraph and therefore deny each and every such
10 allegation.

11     126.   Counterclaim Defendants repeat and incorporate by reference their
12 responses to Paragraphs 25 through 125 as if set forth fully herein.

13     127.   To the extent the allegations in Paragraph 127 call for legal
14 conclusions, Counterclaim Defendants need not respond.  To the extent a response
15 is required, Counterclaim Defendants admit that Counterclaimants purport to bring
16 a claim pursuant to Section 14(e) of the Securities Exchange Act of 1934 and Rule
17 14d-9, promulgated thereunder, against Counterclaim Defendants.  Counterclaim
18 Defendants deny, however, that Counterclaimants have stated a claim upon which
19 relief could be granted and deny the remaining allegations in this paragraph.

20     128.   To the extent the allegations in Paragraph 128 call for legal
21 conclusions, Counterclaim Defendants need not respond.  If a response is required,
22 Counterclaim Defendants deny all such allegations, including that Counterclaim
23 Defendants violated any applicable securities law.  Counterclaim Defendants admit
24 that Allergan filed a Schedule 14D-9 on June 23, 2014.  To the extent Paragraph
25 128 purports to describe, characterize or quote Allergan's various SEC filings, the
26 filings speak for themselves, should be read as a whole, and provide only as stated
27 therein.  Counterclaim Defendants respectfully refer the Court to the documents for

28

1  a full and complete statement of their content.  Counterclaim Defendants deny the

2  remaining allegations in this paragraph.

3      129.   Counterclaim Defendants deny the allegations contained in Paragraph

4  129.

5      130.   To the extent the allegations in Paragraph 130 call for legal

6  conclusions, Counterclaim Defendants need not respond.  If a response is required,

7  Counterclaim Defendants deny all such allegations, including that Counterclaim

8  Defendants violated any applicable securities law.  Counterclaim Defendants deny

9  the remaining allegations in this paragraph.

10     131.   To the extent the allegations in Paragraph 131 call for legal

11  conclusions, Counterclaim Defendants need not respond.  If a response is required,

12  Counterclaim Defendants deny all such allegations, including that Counterclaim

13  Defendants violated any applicable securities law.  Counterclaim Defendants deny

14  the remaining allegations in this paragraph, except admit that Allergan has made

15  extensive disclosures of details related to the proposed transaction..

16     132.   To the extent the allegations in Paragraph 132 call for legal

17  conclusions, Counterclaim Defendants need not respond.  If a response is required,

18  Counterclaim Defendants deny all such allegations, including that Counterclaim

19  Defendants violated any applicable securities law.  Counterclaim Defendants deny

20  the remaining allegations in this paragraph.

21                    **AFFIRMATIVE DEFENSES**

22     Without assuming the burden of proof for such defenses that it would not

23  otherwise have, Allegan asserts the following affirmative and additional defenses:

24     1.     Counterclaimants' claims are barred, in whole or in part, by the

25  doctrine of unclean hands;

26     2.     Counterclaimants' claims are barred, in whole or in part, by the

27  doctrine of *in pari delicto*; and

28

1         3.    Counterclaimants' claims are barred, in whole or in part, because they

2    fail to state a claim upon which relief can be granted.

3

4

5

6

7    Dated:  October 17, 2014                    LATHAM & WATKINS LLP

8

9                                               By:   s/Peter A. Wald

10                                                   Peter A. Wald
                                                     Michele D. Johnson
11

12                                                   WACHTELL, LIPTON, ROSEN &
                                                     KATZ
13                                                   William D. Savitt (*pro hac vice*)
                                                     Bradley R. Wilson (*pro hac vice*)
14                                                   51 W. 52nd Street
                                                     New York, NY 10019
15

16                                                   Attorneys for Plaintiffs
                                                     ALLERGAN, INC. and  KARAH H.
17                                                   PARSCHAUER and Counterclaim-
                                                     Defendants DAVID PYOTT,
18                                                   DEBORAH DUNSIRE, MICHAEL
                                                     R. GALLAGHER, TREVOR M.
19                                                   JONES, LOUIS J. LAVIGNE,
                                                     RUSSELL T. RAY, PETER J.
20                                                   MCDONNELL, TIMOTHY D.
                                                     PROCTOR, and HENRI A.
21                                                   TERMEER

22

23

24

25

26

27

28